IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Exact Software North America, Inc.,　　　　　　　　　　Case No. 3:03CV7183

　　　　　Plaintiff

　　v.　　　　　　　　　　　　　　　　　　　　　　　　　ORDER

Infocon Systems, Inc.,

　　　　　Defendant

　　　　This is a suit by Exact Software North America, Inc., a manufacturer of software, against a "re-seller" of the plaintiff's products. The re-seller, defendant Infocon Systems, Inc., has filed a counterclaim alleging, *inter alia*, fraud. Pending is a motion to compel discovery, which defendant has been permitted to file after efforts to resolve the discovery dispute informally were unsuccessful.

　　　　For the reasons that follow, the motion shall be granted in part and denied in part.

**Background**

　　　　Infocon had a long-standing re-seller contract with Macola, which was purchased either by the plaintiff or an entity affiliated with the plaintiff. As a re-seller, Infocon collected advance fees from its customers, to whom it had sold Macola software, and to whom, having collected the fees, Infocon owed continuing duties. Among these were to provide upgrades as Macola made them available, "bug fixes," and other services as needed by the end-user customers.

Macola's software was compatible with only certain equipment.

The gravamen of Infocon's fraud counterclaim is that Exact, after acquiring Macola, promised Infocon and other re-sellers that it would continue to supply product that was compatible with the end-users' equipment and needs, and, in reliance on those promises, Infocon made investments and otherwise operated in reliance on those promises. Those promises, however, according to Infocon, had been made with an intent to deceive, and were not fulfilled.

Plaintiff does not challenge the adequacy of the counter-complaint under Fed. R. Civ. P. 9(b), which requires claims of fraud to be plead with specificity. Having met that heightened pleading requirement, Infocon's ability to uncover facts in support of its allegations should not be restricted unduly.

The problems confronting Infocon are compounded by the fact that, although the plaintiff is an American company, it is a subsidiary, ultimately, of Dutch interests. Infocon understandably desires that its ability to collect on any judgment not be frustrated by interposed corporate layers. Thus, it stresses the need to find out precisely not only who did and said what, but who may have planned what was done and said, and with what intent such planning was undertaken, and in furtherance of which ensuing statements were made.

In a word, after review of the parties' briefs and supporting materials, I am persuaded that Infocon has shown good reason to permit broader, rather than more limited, discovery. With that general proposition in view, I consider each of the parties' disputes.

**1. Corporate Entities**

As Exact points out, Infocon has not submitted the interrogatories and responses thus far provided to those interrogatories.

I understand, nonetheless, that Infocon seeks to learn the relationship between the company into which Macola was merged, that company and Exact, and that company and other entities affiliated with Exact. This is a fair and sensible request, and it should not be difficult for Exact to answer it clearly and directly.

For now, however, the motion to compel shall be overruled, without prejudice to renew, with the pertinent interrogatories and responses to be provided if a renewed motion is filed.

I note that I agree with Exact that it is not necessary for it to reserve an amount sufficient to cover Infocon's potential damages. Nothing of the sort was intended in my suggestion, which I renew here, that the parties simply enter into a stipulation concerning the corporate relationships existing at the time of and arising after the acquisition of Macola.

For now, the motion to compel further responses to interrogatories 2, 4, 5, 6, and 9 shall be denied, without prejudice.

## 2. Infocon's Re-Seller Status

Infocon, pointing to provisions in its agreement with Macola requiring written notice of termination, seeks specification of communications that Exact believes fulfilled that requirement (i.e., gave Infocon notice of termination). Infocon also seeks information about communications that served to reinstate it as a re-seller. (Interrogatory 3).

Infocon further seeks "operative documents" relating to Exact's contention that Macola superceded a promise to provide quarterly updates to certain parties. (Interrogatory 7).

Such documents are clearly pertinent, important, and discoverable. If not already produced, they shall be; if they have been produced, Exact shall specify which function each such document

performed under the contract between the parties. Requiring it to do so does not call for the production of attorney work product.

The motion to compel responses to Interrogatories 3 and 7 shall be granted as provided herein.

I agree with Exact that it is not necessary for it to produce underlying or internal communications and documents covered by the work product doctrine. But that does not justify refusing to specify which of the documents it has or will produce had the indicated operative effect. To rule otherwise would defeat entirely the purpose of discovery, by allowing Infocon's attorney to sit on documents and disclose them (or not) as he saw fit at trial.

### 3. "Bug Fix" Termination

Infocon alleges that, as part of the events relevant to its claim of fraud and resultant damages, Exact stopped providing "bug fixes" on a routine basis to the mass of the end users. Through Interrogatory 10 Infocon seeks to learn when specific bug fixes were terminated. It also seeks documentation relating to any continuing bug fixes.

I disagree with Exact that deposition testimony takes the place of, or moots the need for responses to this inquiry. I also disagree that the information being sought is protected by the attorney-client privilege or work product doctrine. What is wanted are internal documents relating to the decision to terminate bug fixes [where those documents are not work product or attorney client communications] and documents, including documents served on other re-sellers regarding the termination of bug fixes.

Once again, true work product or attorney-client privileged documents need not be disclosed. But that is not what is being sought from a fair reading of the interrogatory.

The motion to compel shall be granted as to Interrogatory 10 as requested by Infocon.

### 4. President's Council Meetings

Infocon seeks to learn the identities of persons attending Macola's "President's Council" meetings from 1998 through October 31, 2003. In addition, it wants copies of any minutes that may have been prepared referencing certain designated topics.

Infocon says it does not have records of who may have attended the Council's meetings. It also states that it has provided copies of all minutes, such as they were.

In the face of these responses, Infocon asks for an order directing confirmation under oath that a complete review of paper documents and electronic data has been accomplished. That will not be required, as that is, in essence, implicit in the response already made.

One assumes that, when a party states it does not have something, that party has made a diligent, thorough, and good faith search of the areas in where such material is likely to be stored or found. Telling the party to affirm that has occurred under oath adds nothing to this Court's power or willingness to punish the party if the representation turns out to have been false.

Infocon suggests that electronic media be provided to me so that I can look for the documents and data that Exact says do not exist. That is not an acceptable proposal, in view of my technological incapacities and the impact on my time that would be required to undertake that chore.

The motion to compel shall be denied with regard to Interrogatory 11.

### 5. Due Diligence Report

Infocon seeks to inspect the due diligence report prepared before Macola's merger into Exact. It wants to determine whether that report contains information relating to Macola's ownership of and/or control over computer source code. In addition, it appears that Infocon desires to learn

5

whatever it was that Exact knew about other pertinent aspects of Macola's business; this bears on the issue of when Exact decided to take the steps that, according to Infocon, had the effect of freezing or starving Infocon out of its business.

I disagree with Exact's contention that "the ultimate switch to a product compiled using the Fujitsu compiler . . . is wholly irrelevant." (Doc. 88 at 7). That switch, according to Infocon, had drastic consequences on its business, and those consequences were, according to it, caused, at least in part, by assurances that led it to believe that nothing of the sort was to occur.

While personnel data need not be produced, anything relating to the assessment of Macola's business and its prospects shall be.

Exact expresses concern with the highly confidential nature of much of what is in the due diligence report. But there is a protective order, and I presume that its terms will be complied with. Exact offers nothing tangible to suggest that that order will not be complied with. There is, therefore, no confidentiality related reason not to allow disclosure.

I note, moreover, that Infocon's failure to identify what has not been produced in the redacted version it has received hardly forecloses a ruling that less should be withheld. Exact's comments in this regard have something of the *non sequitur* about them: "you didn't tell us what you didn't get so you can't have it."

The motion to compel compliance with Document Request 2 shall be granted as provided herein.

### 6. The "Definitive Agreement"

Document Request 3 seeks a document referenced in another document produced in discovery. It relates, apparently, to a preliminary draft of the merger agreement between the company that acquired Macola and Macola. Exact claims it is not relevant.

I disagree: such document could disclose the parties' intentions and expectations at the time of its drafting. Or it might not; but that does not make it non-discoverable in a fraud case.

The motion to compel shall be granted with regard to Document Request 3.

### 7. Documents Relating to Brieve/Pervasive

Brieve/Pervasive was the platform used by Infocon's customers. Infocon alleges that Exact terminated the relationship that had existed between Macola and Brieve.

Exact claims that this request is a fishing expedition and calls for materials that are not relevant to Infocon's claims.

I disagree: the circumstances of the termination and the events and considerations leading up to it can bear directly on elements of Infocon's fraud claims: particularly Exact's intent and whether it knew or should have known that representations being made to Infocon were deceptive. In the context of Infocon's fraud claim, the documents being sought may be of considerable relevance. That some, most, or all of them may turn out to be less relevant than anticipated, or perhaps not relevant at all [except, possibly, to help Exact disprove Infocon's claim] is not a basis for denying discovery of these documents in the circumstances of this case.

The motion to compel compliance with Document Request 5 shall be granted.

### 8. Price Lists

Infocon seeks price lists, or, in the alternative, listings of products offered for sale at various times and periods.

Exact states that no historical price lists exist, because its pricing and listing of pricing are "dynamic." Infocon says, in effect, that cannot be so. It also contends that it has the technological resources and capacity to retrieve historical price data.

The parties shall negotiate further to determine if such data can be retrieved. If so, it shall be produced; if not, that is the end of the request for price data.

Infocon also seeks information about products and services that were offered for sale by Macola and Exact. If available, that information shall likewise be provided.

This information bears on what Exact did with the products Infocon claims it withdrew from the market, and can give insight into the direction taken by Exact after it acquired the business of Macola. This may lead to relevant and material information with regard to Infocon's fraud claim.

The motion to compel compliance with Document Request 7 shall be granted as provided herein.

### 9. Re-Seller Buyout Agreements

Infocon complains that Exact bought out some of Macola's re-sellers, while it froze or starved out others, including Infocon. These activities, Infocon alleges, were the right and left hand of an effort by Exact to eliminate Macola's re-sellers [and, presumably, capture for itself the profits that the re-seller/middlemen, including Infocon, had enjoyed].

Seen in that light, the request for production of documents relating to the buyouts shall be granted.

The motion to compel compliance with Request 9 shall be granted.

### 10. Version 8.0 "Features List"

The claim that Macola and Exact promised to deliver Version 8.0 of Macola's software is one of Infocon's principal contentions with regard to its claim that Exact deliberately made false representations to induce reliance and expenditures by Infocon.

If documents or data responsive to this request is available, it shall be produced.

The motion to compel compliance with Request 10 shall be granted, as provided herein.

### 11. Contracts and Agreements Between the Parties

To the extent not yet produced, the documents requested in Document Request 11 shall be produced.

### Conclusion

For the foregoing reasons, it is

ORDERED THAT:

1. The motion to compel further responses to interrogatories 2, 4, 5, 6, and 9 is denied, without prejudice;

2. The motion to compel responses to Interrogatories 3 and 7 is granted as provided herein;

3. The motion to compel shall be granted as to Interrogatory 10 as requested by Infocon;

4. The motion to compel is denied with regard to Interrogatory 11;

5. The motion to compel compliance with Document Request 2 is granted as provided herein;

6. The motion to compel is granted with regard to Document Request 3;

7. The motion to compel compliance with Document Request 5 is granted;

8. The motion to compel compliance with Document Request 7 is granted as provided herein;

9. The motion to compel compliance with Request 9 is granted;

10. The motion to compel compliance with Request 10 is granted, as provided herein;

11. To the extent not yet produced, the documents requested in Document Request 11 shall be produced.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge