IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Exact Software N.A., Inc.,                                    Case No. 3:03CV7183

            Plaintiff/Counter-Defendant,

     v.                                                            ORDER

Infocon Systems, Inc.,

            Defendant/Counter-Plaintiff.

This case began as a suit to collect monies allegedly owed to the plaintiff/counter-defendant,

Exact Software of North America, Inc. [Exact], by the defendant/counter-plaintiff, Infocon Systems,

Inc. [Infocon]. Infocon filed a counterclaim alleging, *inter alia*, breach of contract, fraud, and

promissory estoppel.

Exact is the successor to, but remains in the same business as that formerly conducted by a

computer software company known as Macola, Inc. Infocon was a "reseller" [i.e., distributor] of

Macola software. According to Infocon, Macola had contractually committed to providing upgrades

and related improvements for a twenty year period, thereby offering "software that you never grow

out of." (Doc. 14, at 6).

Infocon had developed a customer base of users of Macola software. Through that base,

Infocon generated "reseller fees," which it paid to Macola. In addition, Infocon had maintenance and

service contracts with its customers, thereby generating a steady, and substantial, income stream.

The continued flow of that stream depended, however, on the reliable flow of products from Macola.

In 2001, after an unsuccessful earlier attempt, Exact purchased Macola. According to

Infocon's counterclaim, Exact gave assurances to its resellers, including Infocon, that it would

continue to provide new products to the resellers for distribution to their customers. On the basis of those assurances, Infocon collected maintenance and service fees.

Infocon alleges that new releases and related products and services, though promised, were not forthcoming. In due course, Infocon was unable to service its customers, as it was without the products from Exact that it needed to continue to do so.

In the meantime, Exact alleges in its complaint, Infocon earned, but did not pay over, reseller fees. Nonpayment of such fees led to this lawsuit and Infocon's counterclaim for damages for the alleged destruction of its business.

The progress of this case toward completion has been slow. Delay has resulted, in substantial part, from problems with discovery. Infocon has attempted to learn a great deal while Exact has provided relatively little. Several informal discovery conferences, mandated by our Local Rules, have been unsuccessful. That being so, Infocon was granted leave to file a motion to compel.[1]

For the reasons that follow, the motion shall be granted. All production being ordered herein shall be completed, at Exact's sole expense, not later than July 31, 2006.

### Discussion

According to Infocon, Exact for several months after its acquisition of Macola made assurances that new product would be forthcoming, and Infocon relied on those promises – only to have its business disappear when those assurances were not fulfilled. To learn about the decisions by Exact leading to that result, Infocon has sought extensive discovery.

---

[1] Concurrently with its motion to compel, Infocon filed a motion for leave to file exhibits under seal. That motion shall be granted.

2

Exact has responded with a mixture of delay, equivocation, and noncompliance with orders by this court.

Against this background, I turn to the specific demands in Infocon's motion to compel.

### 1. Sales Information

Principally, I assume, to calculate its damages from its lost business, Infocon seeks lists of products and services sold by Exact during specified periods after Exact acquired Macola, their prices, and related information.

Exact claims that its product/price lists are "virtual" and fluid, and prior lists do not exist. In addition, Exact claims that it has provided the responsive information in the form, apparently, of sales receipts. Exact also claims that whatever information Infocon wants will become known during the next phase of discovery (involving "e-Synergy," discussed below).

These responses do not satisfy Infocon. They still do not have product and price lists, which they have sought throughout the discovery period. It asserts that it cannot do pertinent computations and calculations without those lists. In addition, product and price lists will, Infocon expects, detail the terms and conditions of the sales.

Infocon contends that Exact could have, "at any point in this litigation, easily provided a listing of each [of] the products, maintenance, and support packages it sold by compiling information found on their invoices from June 1, 2002 through March 31, 2003. (Doc. 116, at 5) Infocon supports this contention with copies of exhibits containing pertinent data. (Doc. 109, Exh. B).

I am persuaded that Exact has the wherewithal to provide full and complete answers to the discovery regarding sales information, including, specifically, product and price lists, long sought by Infocon.

3

Failure to provide this information as requested and required by Infocon shall, at a minimum, preclude Exact from challenging in any way the calculation of damages presented to the jury by Infocon, and may result in a charge to the jury that, if they find in Infocon's favor on the issue of liability, they are to find damages in the amount shown in Infocon's damage presentation.

## 2. e-Synergy Discovery

Exact has created, uses, and includes in its product line a document and workflow management system, "e-Synergy." This court directed Exact to use that system to retrieve data properly sought by Infocon. Infocon provided Exact with descriptors for such data.

Those requests, Exact states, "were run precisely in the manner" that they were described in the letter in which they were transmitted by Infocon's counsel. (Doc. 115, at 2).

In other words, as I understand that statement, Exact ran the descriptors without refinement as search commands, rather than using them as a basis for developing search commands.

As a result, not surprisingly, Exact produced little in the way of useful information.

For this, it blames Infocon for not giving it adequate or more precise descriptors. In Exact's view, it did as it was told, and that was enough, even though little, if anything, responsive to the underlying discovery requests was retrieved.

In its response to the motion to compel, Exact now reports that the "parties are now negotiating the terms of an agreement to permit independent third-party review of the e-Synergy database for the period" covered by Infocon's request.[2] (Doc. 115, at 2).

---

[2]

I assume that this statement relates to Infocon's request that I order Exact to permit a "Microsoft Qualified SQI Data Base expert to examine the data base files and run the defined queries with Infocon's officers present to assist and offer such direction." (Doc. 109, at 15). In any event, that request shall be granted, it appearing necessary to get someone from the outside to run a program that Exact designed, uses, and sells.

4

These responses are too little, too late.

Infocon knows what it wants to learn, and has, in view of its long-standing dealings with Macola and its commercial expertise as a software distributor. But it does not know how Exact has created and programmed its document storage and retrieval systems to obtain that information. It is, after all, Exact's system, not Infocon's. It is, moreover, a system that Exact not merely uses, but markets for its document retrieval capabilities.

Infocon knows what it wants. Exact knows what that is. And knows, as well, how to get it.

Nonetheless, Exact failed to conduct a search, must less a meaningful search, as that term is commonly understood, in a good faith effort to find the information that it has known for a long time Infocon wants, needs, and is entitled to obtain.

I have little doubt that, if Exact, for its own internal purposes, wanted to find the information that it has been told to get for Infocon, it could find it, and find it promptly and completely.

Even if my view of the relative ease with which the searches can be accomplished is somewhat inaccurate, I have no doubt whatsoever that, with a good faith effort, and good faith communication between those requesting and those searching for the information, it can be retrieved relatively easily.

## C. Due Diligence Reports

Infocon seeks copies of the due diligence report or reports prepared prior to Exact's purchase of Infocon.

---

To the extent that Exact might contend that operation of its system should not be exposed to Infocon's officers, it has waived its right to assert any such objection in view of its failure to have conducted the prior e-Synergy search in a good faith and productive manner. Exact not being willing to do the work fairly and effectively, it is proper and appropriate to let that work be overseen by persons who are willing to see to it that it is done appropriately.

5

Exact has consistently claimed that no such report or reports had been prepared, at least not in any final or conventional form. It has made this claim in the face of testimony by the CEO of its holding company parent that such report exists. [Exact responds to that testimony by asserting that the deponent, a native of Holland, did not really know what he was talking about].

Infocon, having during that deposition learned the identity of the law firm that prepared the report, contacted that firm. It, in turn, confirmed the existence of due diligence reports, and provided copies to Exact's counsel. She has provided redacted copies of those reports to Infocon's counsel.

To the extent that Infocon presently considers production of the due diligence reports to be incomplete, it shall request further production. To the extent that Exact contends that material is privileged, it shall submit such materials, if being sought by Infocon, to the undersigned for *in camera* review. Any such submission shall occur only after the parties have discussed the nature of the purported privileged materials, Infocon has concluded that it needs them, and Exact has concluded that they are, in fact and law, privileged.

Exact attempts to justify its failure to produce the materials obtained from the law firm on the basis that they were not in its possession. That explanation is not acceptable: a reasonably, even a minimally diligent inquiry would have made Exact's counsel aware that the due diligence reports were possessed by the attorneys representing Exact and/or its corporate parent during the acquisition of Macola. It is clear that no such inquiry was made; otherwise the unjustifiable delay in producing the due diligence reports would not have been encountered.

### D. Third Party Contracts

Infocon seeks complete and unredacted third party software provider documents. Some of those documents have been received, but with various redactions.

6

Exact responds that it will now provide those documents "if counsel for Infocon will agree to maintain the prices in confidence unless the Court directs otherwise, . . . ." (Doc. 115, at 5).

Exact will provide all such documents in unredacted form, without being designated in whole or part "Attorneys' Eyes Only," and subject only to the parties' prior protective order.[3]

### E. Stipulation

If I understand the parties' briefs, the dispute concerning who is to verify the stipulation about corporate structure has been resolved. If not, Exact shall do as requested by Infocon.

### F. Reseller Status

Infocon seeks confirmation of the means and manner, and the content, of any and all communications from Exact in which Exact notified Infocon that Exact was ending Infocon's reseller status.

Exact has responded that Infocon has received "a series of letters between Infocon and Exact, . . . ." (Doc. 115, at 6).

Exact shall specifically identify each letter in such series. Once it has done so, no further evidence of any communication purporting to give notice of such termination shall be admitted by Exact at trial.  Infocon seeks copies of all contracts between it, on the one hand, and Macola and Exact, on the other. To the extent, for whatever reason,[4] it does not have those documents, it is entitled to obtain them from Exact.

---

[3]

See *infra*, § I, for a discussion of the removal of "Attorneys' Eyes Only" designation.

[4]

Exact contends that Infocon already has, or should have access to some or all the documents it seeks by this request. As to agreements directly between Macola or Exact and Infocon, one would assume that such was so. But, as to other documents covered by this request, it appears that some of those documents were to be available to Infocon "if a need arose." (Doc. 116, at 14).

**G. End User Sub-License Agreements**

End user sub-license agreements were entered into between Infocon, as reseller, the end user, and Macola or Exact. The signed copies were returned to Macola or Exact; Infocon represents that they are not in its possession, despite Exact's suggestion to the contrary.

These agreements are understandably a proper subject of discovery. They shall be provided.

I note that Exact's response indicates that these documents are available on e-Synergy. (Doc. 115, at 8). That being so, they should have been provided when first requested. All such documents shall be provided now.

**H. Verification**

Infocon desires to have Exact's discovery responses verified by a person with knowledge or, where such person is not available or production cannot be made, on the basis of diligent inquiry.

That is a reasonable, and, in light of the bumpy course of discovery thus far, a sensible request. It is especially so in light of Exact's contention that notes of an important meeting between Infocon officers and Exact's CEO have become lost.

The production to be made in compliance with this order shall be accompanied by verification in the form and manner requested by Infocon.

**I. Sanctions**

As noted throughout this opinion, Exact has engaged in a persistent and comprehensive effort to delay, if not avoid, producing information that it has properly been asked for and, on occasion, ordered to produce.

By July 14, 2006, Exact shall show cause, pursuant to Fed. R. Civ. P. 37(a)(4)(A), why it should not be required to pay the costs and expenses: 1) incurred by Infocon in bringing and briefing

8

its motion to compel; and 2) to be incurred by both parties in accomplishing the discovery being ordered herein. Infocon's response shall be filed July 25, 2006, and Exact's reply shall be filed July 31, 2006.

In addition to the other sanctions that may be imposed, I conclude that all documents marked "Attorneys' Eyes Only" shall no longer be subject to that restriction, provided they are otherwise only disclosed within the confines and constraints of the protective order.

Any benefit to Exact from such designation is outweighed by the extent and duration of the roadblocks it has placed in the way of smooth-flowing and timely discovery. Its tactics have caused obstruction and delay.

Prejudice to Infocon is manifest. It has expended substantial sums sending its lawyers to several discovery conferences, all of which have, in the end, proven fruitless, at least to some extent. Trial has twice been postponed, thereby delaying, and thus diminishing the effective value of, any recovery to which Infocon may be entitled.

Part of the price Exact must pay for its obstructionist tactics is forfeiture of the protection afforded by the "Attorneys' Eyes Only" designation. Such designation, while it may preserve confidential information to a greater extent than a protective order, also has the inevitable consequence of making use of such material more cumbersome and less effective.

That burden no longer exists in this case.

### Conclusion

I expect that the foregoing resolves all current, and will avoid any future discovery disputes.

I expect, as well, that compliance with this order will be undertaken in good faith and due diligence, and will be complete.

9

If these expectations are not met, and substantial cause for the failure to meet these expectations is not shown, further sanctions, including, *inter alia*, exclusion of evidence and entry of judgment by default, shall be considered.

In light of the foregoing, it is

ORDERED THAT plaintiff Exact Software North America shall:

1. By July 31, 2006, completely produce, as requested by Infocon, and do so in verified form as required herein:

    A. Sales information;

    B. Data and information from the e-Synergy searches;

    C. Due diligence reports;

    D. Third Party Contracts;

    E. A Verified Stipulation;

    F. Documents relating to termination of its reseller status; and

    G. End User Sub-License Agreements;

2. By July 14, show cause why it should not be required to pay the costs and expenses: a) incurred by Infocon in bringing and briefing its motion to compel; and b) to be incurred by both parties in accomplishing the discovery being ordered herein. Infocon's response shall be filed July 25, 2006, and Exact's reply shall be filed July 31, 2006.

So ordered.


                s/James G. Carr
                James G. Carr
                Chief Judge