IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Exact Software North America, Inc.,                    Case No. 3:03CV7183

              Plaintiff

     v.                                                    ORDER

Infocon, Inc.,

              Defendant

      This case began as a collection action by the plaintiff, Exact Software North America, Inc. [ESNA], against the defendant, Infocon, Inc. ESNA claimed that Infocon owed monies to ESNA that Infocon had received from its customers.

      ESNA is a successor through merger to Macola, Inc., a Marion, Ohio, producer of software.

      Infocon, which had been a "reseller" [i.e., distributor] of software produced by Macola, counterclaimed, alleging: 1) breach of contract; 2) fraud; and 3) intentional interference with contract.

      Pending is Infocon's Motion for Entry of Default Judgement Pursuant to Fed. R. Civ. P. 37(b) [Doc. 141] as to ESNA's complaint and Infocon's counterclaims.[1] Infocon bases its motion

---

[1]
Technically, a motion for "default" would appear to relate solely to one's claims [in this instance, Infocon's counter-claims against ESNA], rather than an opponent's claims [here, ESNA's complaint], as to which a motion to strike or dismiss would be appropriate.

I view Infocon's motion as seeking both dismissal of ESNA's complaint and judgment by default as to Infocon's counter-complaint; use of the generic "default" in this opinion does not limit the relief being sought or to be granted.

on ESNA's persistent and protracted failures to comply with its discovery obligations and this court's orders relating to those obligations.

For the reasons that follow, I conclude that, due to ESNA's persistent and egregious noncompliance with a series of discovery orders, sanctions are fully warranted. But, as I cannot presently ascertain where the fault for that noncompliance lies as between ESNA and its now former counsel,[2] and thus on whom sanctions for noncompliance should be placed, ESNA will be granted leave to show cause why the relief sought should not be imposed against it.

## Background

During the years of its business relationship with Macola, Infocon developed a customer base that generated income in two stages. First, Infocon would provide software to its customers; then it would enter into "maintenance" agreements with the customers. Under those agreements, the customers would prepay for periodic upgrades to the software and any maintenance and service that might be required during the term of the agreements.

Infocon, in turn, was contractually obligated to pay Macola a portion of the fees it was receiving from its customers.

Continued availability from Macola of software upgrades was crucial to Infocon's ability to maintain its customer base and income.

---

[2]

During the course of these proceedings, ESNA has been represented by various counsel and law firms: Bruce Ingran and Peter Lusenhop of Vorys, Sater, Seymour & Pease (April 16, 2003 - October 14, 2004); Karen Kelly Grasso (then of Thompson Hine) (October 14, 2004 - June 30, 2005); Stephen Williger of Thompson Hine (June 30, 2005 - July 18, 2005); Ms. Grasso (now of Goldman & Rosen) (July 18, 2005 - date);  and, since November 17, 2006, John Hagberry of Ulcer & Berne.

Most, and, indeed, perhaps all the failures to comply with this Court's discovery orders have occurred during Ms. Grasso's tenure as counsel. Her motion for leave to withdraw is pending.

2

ESNA is affiliated with a Dutch company, Exact Holding NV [Exact], which acquired Macola [and transformed it into ESNA] through a "reverse merger." According to Infocon's counter-complaint, it received assurances that ESNA would continue to provide it with software upgrades, thereby enabling Infocon to continue to service its customers and generate income.

The complaint alleges that ESNA did not fulfill its obligations to provide products for Infocon to supply to its customers. For a period of time, Infocon continued, however, to receive advance maintenance fees from its customers.

Not having the upgrades it claims it had been promised, and thus not being able to perform on its obligations under the maintenance agreements with its customers, Infocon stopped collecting maintenance fees and otherwise ended its relations with its customers, at least insofar as those relations involved Macola/ESNA software. In addition to alleging fraud in ESNA's original assurances that it would provide upgrades and breach of contract against ESNA, Infocon alleges that ESNA tortiously interfered with its contractual relations with its customers, and, as well, that ESNA ultimately took over Infocon's former customers.

ESNA brought its collection action for unremitted maintenance fees in the Marion County, Ohio, Court of Common Pleas. Infocon removed the suit to this court. At a scheduling conference on July 28, 2003, the parties were given nine months to conduct discovery. Trial, which was to follow summary judgment motion practice, was set for October 5, 2004.[3]

The scheduling order included the following boilerplate directive:

---

[3]

The deadlines initially set could not be kept because of the time required to adjudicate ESNA's motion to dismiss Infocon's amended counter-complaint. The discovery problems leading to the pending motion for default began after ESNA's motion to dismiss was overruled on April 16, 2004. [Doc. 59].

No motion to compel may be filed unless the parties, as required by Local Rule 37.1, have undertaken in good faith to resolve discovery disputes, and, if unable to do so, have contacted the court with a request for judicial resolution.

[Doc. 21].

This mandate, which expands upon and implements the purpose of Fed. R. Civ. P. 37(a)(1)(A),[4] is designed to reduce, if not nearly eliminate the delays commonly resulting from discovery disputes.

I have followed the practice of requiring the parties to contact me forthwith with discovery problems for about twenty-five years. In all but the most rare of instances, this method of informally resolving discovery disputes has successfully reduced delay, expense, inconvenience, and uncertainty for the parties. This method also has significantly reduced the judicial time and effort that otherwise would have been expended adjudicating formal motions to compel.

This approach did not work in this case, despite extensive effort on my part to see to it that it would.[5] For the reasons that follow, I find that the fault for its failure sits squarely in the lap of

---

[4]

A motion to compel discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action."

[5]

I held discovery conferences and issued orders to provide discovery on October 20, 2005, November 29, 2006, February 27, 2006 [order issued March 3, 2006], March 9, 2006 [order issued March 10, 2006], and August 4, 2006. Each of those orders commanded production by ESNA of enumerated discovery by a date certain. ESNA met none of those deadlines; indeed, they were all disregarded by ESNA without any explanation, excuse, or request for extension.

In addition, two lengthy and detailed opinions were issued after leave had been given to Infocon to file motions to compel. [Doc. 96 [December 23, 2005] (granting motion in part and denying in part)]; [Doc. 119 [June 26, 2006] (granting motion)].

Finally, after a discovery/status conference on August 2, 2006, Infocon was granted leave to file the instant motion for default and a schedule for briefing such motion was prescribed. [Doc. 135].

4

ESNA and/or its counsel. Before, however, granting Infocon's motion for default, ESNA shall be granted the opportunity to show cause why it should not be held accountable for the nearly utter failure to comply with the series of discovery orders issued in this case.[6]

## Discussion

### A. Infocon's Allegations

Before turning to the discovery that Infocon sought, I ordered, and ESNA failed to provide, despite my orders, a summary of the allegations of the complaint will set the context in which the discovery dispute arose, conferences were conducted, and orders were issued.

The gravamen of Infocon's counterclaims is that ESNA promised to provide contractually mandated upgrades to Macola software.[7] Infocon alleges, moreover, that ESNA's misconduct went beyond simple nonperformance of its contractual obligations, and that ESNA's assurances about the

---

[6]

The burden of showing cause properly belongs on ESNA:

> a show cause order only acts as notice to the relevant party by informing the party what conduct is alleged to be sanctionable, and allows the party an opportunity to respond; by presenting evidence and arguments why sanctions should not be imposed, the party has the opportunity to "persuade" the court that sanctions are not warranted. This is a well established procedure in dealing with § 1927 sanctions and we see no reason to repudiate the procedure now. Therefore, the burden of proof has not been shifted; the show cause order merely facilitated the due process requirements; .   .   .   .

*Cook v. American S.S. Co.*, 134 F.3d 771, 776 (6th Cir. 1998) (imposing sanctions under 28 U.S.C. § 1927; rejecting sanctioned party's claim that the district court improperly shifted the show cause burden to him).

[7]

According to the amended counter-complaint, Macola agreed to provide reseller support for its software products, including "'enhancements, corrections, and problem diagnosis support'". [Doc. 37-1 ¶ 21 [quoting Macola/Infocon "Support Subscription Service Agreement]]. As the relationship between Macola and Infocon evolved, Macola agreed to provide upgrades to Infocon for it to deliver to its customers. [*Id.* ¶ 46]. The contract was to last for twenty years. [*Id.* ¶ 47].

status of its work on upgrades constituted fraud. These and other actions had the effect, according to Infocon, of destroying Infocon's relationships with its customers.

The breach of contract claim is based on allegations of a deliberate breach of contractual commitments between Macola/ESNA and Infocon, whereby ESNA refused to provide software upgrades that were at the heart of Infocon's business with its customers. [Doc. 37-1 ¶¶ 116-123].

With regard to the assertions of fraud in the amended counter-complaint, Infocon alleges that, before its merger into ESNA, Macola had notified its resellers, including Infocon, that an upgrade ["Version 8.0"] was being developed and would be made available. [Doc. 37-1 ¶ 73]. Infocon further alleges that ESNA specifically repeated that representation. [*Id*. ¶ 75]. Despite these representations and assurances, ESNA, according to the amended counterclaim, secretly decided to terminate Version 8.0. [*Id*. ¶¶ 80, 81].

Infocon also contends that, when it asked ESNA's parent, Exact, about rumors concerning a decision not to issue Version 8.0, Exact's Chief Executive Officer responded with assurances that a version better than 8.0 would shortly be forthcoming. [*Id*. ¶ 84]. When the announced deadline for delivery of this new software was not met, Exact, according to the amended counter-complaint, notified Infocon that the upgraded version was already in place at Macola/ESNA. [*Id*. ¶ 96].

These assurances were false, Infocon claims, because ESNA had not renewed a licensing agreement with a third-party supplier of an integral component [namely, the "Micro-Focus compiler"] of the software. [*Id* ¶¶ 89, 90]. The fact of such nonrenewal, and, indeed, the fact that Macola and ESNA did not have sole proprietary interest in the entire software, had, Infocon claims, never been disclosed to Infocon. [*Id*. ¶ 93].

Because it was unaware of the true circumstances, Infocon continued to bill its customers for the anticipated upgrade, and, for a time remitted that portion of its receipts that it was required to remit to ESNA under its agreement with Macola. [*Id*. ¶ 98].

Infocon's allegations of fraud, accordingly, encompass both deliberate false misrepresentations and failure to disclose material facts.

As a consequence of the non-renewal of the Micro-Focus compiler license, according to the amended counter-complaint, Infocon can no longer serve its customers' needs for service to their existing Macola software. [*Id*. ¶ 105].

With regard to its claim of tortuous interference with its contractual relations with its customers, Infocon's amended counter-complaint alleges that it was notified on September 26, 2003, that its "reseller agreement would be terminated." [*Id.* ¶ 137]. No grounds existed for such termination, Infocon alleges. [*Id*. ¶¶ 135, 136].

Infocon also states that ESNA sent a letter to Infocon's customers informing them that Infocon no longer represented ESNA, [*Id.* ¶ 139], a new representative would be assigned to them, and their accounts would be transferred by a certain date unless ESNA was notified otherwise. [*Id* ¶ 140]. The foregoing actions, Infocon alleges, were in furtherance of an attempt by ESNA to supplant Infocon with its competitors. [*Id*. ¶ 143].

### B. Discovery Sought by Infocon
### and Disputed by ESNA

### 1. Corporate Relationship Between Exact and ESNA

Infocon seeks information about the relationship between ESNA and its Dutch parent, Exact. On the one hand, this information may help Infocon [and the jury, were trial to occur] know who

7

was responsible for the alleged breach of contract, fraud, and interference with contractual relations. Exact may have played no role in any of the activities giving rise to this suit; it may have played some role; or it may have played a commanding role. Determination of what that role, if any, Exact might have played necessarily begins with an understanding of the corporate relationship between Exact and ESNA.

An understanding of inter-corporate relationships is also important to ascertaining the location of discoverable information about the transactions underlying the counter-complaint and the identity of potential witnesses.

Finally, and perhaps most important for Infocon, it understandably wants to be certain that, if it prevails, it can proceed to collect from a judgment-worthy defendant.

To facilitate and expedite ascertainment of Infocon's efforts to find out what the ESNA/Exact relationship is, and ultimately, what role was played by whom in the events giving rise to this lawsuit, I suggested that a stipulation be prepared and filed. This rather simple request, which I can hardly believe could not have been easily accomplished, and which twice was encompassed in court orders [Docs. 104, 119], has only recently been fulfilled – and even then, contrary to those orders, in unverified form.[8]

---

[8]

Infocon's desire that the stipulation be verified is, under the circumstances of this case, entirely reasonable ESNA's refusal to provide such confirmation is indicative of its thoroughly unyielding and uncooperative approach to discovery in this case.

ESNA's opposition to the pending motion for entry of judgment of default attempts to deal with the issue of the long-delayed stipulation by asserting that Infocon has obtained "more than adequate information" about how ESNA became Macola. [Doc. 150 at 7; *see also id*. at 14 [asserting Infocon's inability or unwillingness "to understand the entirety of the transaction documents before it"].

Aside from the fact that ESNA actually confirms that both individuals who offered evidence on

## 2. ESNA's Sales

Infocon has also sought to learn what ESNA sold and to whom, when those sales occurred, and how much they earned ESNA during a specified post-merger period.

Infocon seeks this information to determine the extent to which ESNA has transacted business directly with its customers [or now former customers], and the nature of that business.

The requested sales information is directly pertinent to establishing the merits of all of Infocon's claims: i.e., that ESNA, by selling to others, breached its obligations under its contract with Infocon, dealt duplicitously with Infocon, and interfered with Infocon's relations with its customers.[9]

Information about ESNA's sales is equally pertinent with regard to a determination of Infocon's damages, in the event it prevails on any of its claims.[10]

---

that subject did not have first-hand knowledge, [*id*. at 7], ESNA's post-hoc unilateral assertion about what Infocon needs has absolutely no bearing on the issue at hand. That issue is whether ESNA's failure to comply with my orders that it provide the information in the form of a verified stipulation supports the sanction of default.

[9]

I intend no expression as to the merits of Infocon's contentions as to each of these claims. My purpose here is simply to show that the requested information is clearly relevant, regardless of what it might show as to the merits.

[10]

ESNA's response to the pending motion for default contests the need for the discovery ordered with regard to sales information. [Doc. 150 at 10 [The information being sought by Infocon "would not permit the conclusions  .    .    . [and] would have the potential to be seriously misleading."]]. Unilateral assessment of the usefulness of information ESNA was ordered to provide is hardly a defense to a motion for default based on the complete failure to have complied with orders that it be provided.

9

The subject of ESNA's sales data was a repeated issue at several discovery conferences. Initially, ESNA claimed that it did not have conventional [i.e., hard copy] price lists. Its pricing data, ESNA contended, was "virtual" and day-to-day data could not be retrieved retroactively.[11]

I have previously expressed and continue to be of the view that the contention that ESNA cannot determine what it sold, when it was sold, to whom it was sold, and how much it was sold for

---

[11]

During discovery conferences, I used the metaphor "what was on the lot" to describe the information being sought [and implicitly, to express my view that Infocon's request was straightforward and readily comprehensible].

ESNA's response to the motion for default suggests that producing "what was on the lot," had ESNA complied with the orders to produce the requested sales information, would not have led to useful or pertinent information. [Doc. 150 at 9, 10]. It is immaterial whether ESNA's distortion of the metaphor and its significance is willful. What matters is that pertinent sales information, crucial to Infocon's case, has never been provided. Of greatest relevance to the motion for default, ESNA has *never* presented a plausible, much less acceptable explanation for its failure to comply with orders that it be produced.

I note, finally, that ESNA's representations about the status of historical pricing data has never been supported by a verified affidavit of a person within the company with knowledge. Instead, all that has been offered on this subject are the conclusory assertions of counsel. That is so for practically every other representation about what ESNA has available and/or whether requested information can be produced. Where a party claims not to have information, it should explain how and why that is so in affidavits or by producing witnesses who can make such representations under oath and subject to the test of cross-examination.

10

to be utterly implausible.[12] It is inconceivable that a sophisticated company with a foreign parent would not retain and be able to retrieve information so basic to any commercial enterprise.

To be sure, there may well be no "price list" in the conventional sense of that term, and whatever data is available may be in digital, rather than paper form. But that does not matter. What matters is that all companies have to keep sales records to be able to conduct their operations, work with their customers, generate sales programs, and, most importantly, accounting activities, especially with their suppliers. The need to retain such information is also essential for tax purposes, and, as well, for accountability to shareholders.

Such data is crucial to Infocon's case. Without it, it will be severely prejudiced. Failure to provide it can only be viewed as deliberate and contumacious. Even if discovery had otherwise been forthright and promptly forthcoming, withholding this information would, without more, call for stringent sanction.

### 3. Due Diligence Materials

Infocon seeks due diligence materials that may have been generated during negotiations between Exact and Macola. Such materials, in Infocon's view, could disclose the extent to which Exact became aware of Macola's mode of doing business and its contracts and relations with its

---

[12]

My most direct response to ESNA's contention occurred at the August 4, 2006, conference:

> What happens if the IRS comes knocking and says, we're going to audit you for your tax year 2003, and we say we don't have any information about our sales, we don't do that; and by the way, so we can't tell you what our income was because we can't tell you the products we sold.
>     That's silly.

[Tr. 8/4/06, at 6].

11

customers. Such insight may, Infocon suggests, have fostered or furthered an intent on ESNA's part to displace Infocon's place and role as a distributor, and to deal with Infocon's customers directly.

In the initial discovery conference discussions about this request, counsel for ESNA stated that the negotiations for the merger had occurred in two stages. The first had ended without success; to the extent that any sort of due diligence had occurred, ESNA's counsel represented,[13] it would have occurred prior to the collapse of the first round of negotiations. Sometime thereafter the merger [via a stock acquisition] occurred on an expedited timetable.

ESNA repeatedly denied that any materials relating to due diligence continued to exist. In the face of those statements, counsel for Infocon contacted Hale & Dorr [now known as "Wilmer Hale"], former counsel for Exact during those negotiations. Wilmer Hale confirmed that due diligence had, indeed, been undertaken.

Once this became known, counsel for ESNA switched tracks, and contended that her client was not in possession of those materials, and thus could not be required to produce them.[14]

---

[13]
 As with all other material representations regarding discovery, counsel's representations about the due diligence inquiry and materials have never been supported by affidavit or other sworn testimony.

[14]
 Most recently, in ESNA's response to the motion for default, ESNA's counsel asserts that any due diligence documents would have been returned, per Macola's instructions, to it after the collapse of the initial merger discussion. [Doc. 150 at 12].

This representation does not, however, explain how or why counsel for Exact, as discussed above, came to retain some or all of the due diligence materials.

To the best of my recollection, no representation about such instruction from Macola and resultant action in accordance with that instruction was made to me prior to the response to the motion for default.

At the very least, an attorney who was acting in good faith, and seeking to facilitate rather than impede discovery, could, would, and should have either obtained permission from ESNA's parent, Exact, to have Wilmer Hale produce the documents, or, at the very least, informed counsel for Infocon that due diligence had been conducted by that firm. At that point, Infocon could have undertaken to procure the due diligence documents from Wilmer Hale via Exact. This court could thereafter have dealt with any objection on the part of Exact in due course.

In my view, ESNA's response to the request for due diligence materials manifested, at best, bad faith. At worst, it is indicative of an intent to mislead the court – at least to the extent that I and counsel for Infocon were repeatedly told no due diligence report existed. Even if technically true, that response concealed the due diligence work that had, in fact been done, and which should have been disclosed to Infocon.[15]

### 4. Third-Party Contracts

Infocon also sought to obtain ESNA's contracts with third parties, such as those with whom it has licensing agreements. This information is pertinent to the fraud claim, as Infocon has learned that one reason for ESNA's failure to produce the upgraded Version 8 is the loss of its license to incorporate an integral component in the software. Such contracts [or lack thereof] might reveal the

---

[15] ESNA's response to the motion for default contends that Infocon "received the due diligence documents in two stages." [Doc. 150 at 11]. That contention needs a bit of illumination: the "first stage" to which ESNA appears to be referring would seem to be an initial production of an exhibit to a due diligence report. The "second stage" consisted of a privilege log that concealed more than it disclosed. Contrary to the implication that ESNA's statement might suggest, the fact is that, to the extent that Infocon ultimately may have obtained due diligence materials, acquisition of those materials is due far more to the initiative of its counsel than it is to anything done by ESNA's counsel to cause those materials to be provided.

13

date as of which ESNA was aware that Version 8 could not be produced, and thus, whether its assurances to Infocon that Version 8 was forthcoming were knowingly false.[16]

### 5. Date[s] of Notice[s] of Termination of Relationship

Infocon has also asked ESNA to specify when and how it communicated its decision to terminate Infocon as a reseller. This information is clearly pertinent to Infocon's claim of breach of contract. It may, as well, bear on Infocon's claim of tortuous interference with its contractual relations with its customers.

A clear, definitive response to this request would appear to be a matter of utmost simplicity: namely, specification of one or more communications in which ESNA, in its view, terminated its relationship with Infocon.

ESNA's responses to this most simple of questions have been inconsistent and not definitive. While suggesting a couple of different dates on different occasions as the date of notice, ESNA has, to my understanding,[17] never specified the precise communication.

This failure is incomprehensible. Although, as ESNA initially contended, Infocon may have had the communications, that contention did not meet the request, which was for ESNA to specify which communication was intended to convey the particular message. ESNA alone knows what it

---

[16] ESNA's response to the motion for default contends that Infocon narrowed the scope of this request and that the discovery, as so narrowed, has been provided. I will assume that, for purposes of this decision, that such is the case. But that still does not account for, much less explain or justify the delay in complying with the prior orders to produce.

[17] This understanding on my part might be in error, as ESNA asserts in its response to the motion for default that its attorney has "identified with specificity the documents that [it] contends constitute notice of termination of Infocon's reseller status." [Doc. 150 at 14]. Assuming that such is the case, that assertion does not explain why such specification did not occur within earlier deadlines – or, indeed, without the need for court intervention and orders to produce.

14

meant to say and when it said it. But it did not do when this court ordered it to do so, and it has never explained its failure to comply with my orders that it do so far sooner.

### 6. End-User Sub-licensing Agreements

The other major category of discovery relates to end-user sub-licensing agreements. These are agreements between ESNA and its customers [including, Infocon believes, former customers that it once served]. This information is pertinent to Infocon's claim of tortuous interference with contractual relations. Indeed, it is crucial to Infocon's case against ESNA on that portion of its counterclaim. But nothing was forthcoming within the time frames set in my court orders.[18]

### C. Discovery Conferences and Orders: ESNA's Failure to Comply

Infocon first became aware of obstructionism on the part of ESNA shortly after ESNA's motion to dismiss was overruled and discovery resumed. After receiving ESNA's answer to the counterclaim, counsel for Infocon asked ESNA's counsel in mid-2004 for the basis for ESNA's denial in its answer of certain facts that, in the view of Infocon's counsel, were indisputable.[19]

Another indication that problems may have lain ahead arose when, during a deposition of ESNA's in-house counsel, who had signed ESNA's responses to Infocon's initial discovery requests,

---

[18]

ESNA's response to the motion for default asserts that it has produced all contracts with those customers with whom it has done business since termination of its relationship with Infocon. Assuming that is true, that representation does not explain why that production was not made when first requested and/or first ordered by this court.

[19]

Among these facts were receipt of an award by Infocon and an exhibition on a date certain of Version 8.0. Infocon provided ESNA's counsel with supporting documentation to show that these facts could not plausibly or fairly be disputed.

Infocon learned that she did not have first-hand knowledge of the matters being disclosed. The attorney said that the responses had been prepared by retained counsel.

In October, 2004, new counsel [Ms. Grasso] appeared for ESNA. She assured Infocon's counsel that revised discovery responses would be forthcoming. They were not.

In April, 2005, Infocon renewed its request for responses to the concerns it had expressed during the preceding year. The response by ESNA did not resolve those concerns, and Infocon submitted its Second Request for Discovery. The time for a response to that request passed without a response by ESNA.

This led to a discovery conference with the court on October 20, 2005.  I ordered ESNA to respond to the requested discovery by October 24, 2005. During that conference, I first suggested that questions about the corporate interrelationships be resolved through a stipulation. In addition, I ordered ESNA to submit its tax returns by that date or show cause why it should not be sanctioned. [Doc.73].

ESNA ignored that order. It filed nothing on the deadline date.

In the face of ESNA's unresponsiveness to its discovery obligations and this court's order to produce by October 24, 2005, Infocon's attorney sent a memorandum of disputed discovery to ESNA's attorney. She informed Infocon's counsel that a response to that memorandum would be forthcoming on November 15, 2005.

That self-imposed deadline was not met.

Infocon requested another discovery conference with me. That conference was held on November 28, 2005. This led to my granting leave to Infocon to file a motion to compel [Doc. 78], which became decisional on December 15, 2005.

16

Thereafter on December 23, 2005, I entered a ten-page order discussing the parties' positions as to each item of disputed discovery, granting in part and denying in part Infocon's motion to compel, and explaining my reasons for allowing or denying the requested discovery. [Doc. 96].[20]

Among the items ESNA was to produce were:

- documents relating to the putative notice of termination from ESNA to Infocon

- documents relating to Macola's supersession of its promise to provide quarterly updates to certain parties

- the due diligence report obtained before the acquisition of Macola

- documents relating to termination of "bug fixes"

- documents relating to the Brieve/Persuasive platform used by Macola's customers and ESNA's termination of Brieve

Through oversight on my part, I neglected to set a date certain for compliance with the order of December 23, 2005. This led to an inquiry by Infocon's counsel on January 10, 2006, for information from ESNA about its anticipated compliance with the December 23rd order.

Minimally partial response having been provided by ESNA by January 13, 2006, counsel for Infocon filed a motion for me to set a firm date for compliance. This led to a phone conference on

---

[20]

ESNA's response to the pending motion for default asserts that in that motion Infocon "does not acknowledge that the positions taken by Exact were affirmed with respect to certain of the issues .  .  ., and that the Court set conditions on the discovery." [Doc. 150 at 8]. ESNA's response fails to address the primary issues under consideration. What matters at this point is whether the discovery that *was* ordered was produced, and if not, whether, under all the circumstances the sanction of default is appropriate. At most, the fact that Infocon did not get everything it wanted shows that ESNA's objections and arguments were considered and, where meritorious, were responded to and reflected in the ensuing order.

January 26, 2006; ESNA's attorney stated that she would comply with the order by January 30, 2006. That commitment was memorialized in yet another deadline-setting order. [Doc. 99].

That deadline passed unmet. ESNA's attorney did not favor counsel for Infocon with further information as to when discovery might be afforded. Nor did she explain why she had again ignored a court-mandated deadline.

Some discovery [described by Infocon's counsel as "an unorganized document dump" [Doc. 141-2 at 16]] came forth on February 7, 2006. Infocon's counsel, concluding that ESNA still had not complied with the December 23, 2005, order, filed a motion for sanctions on February 14, 2006.

This led to yet another discovery conference on February 27, 2006. I ordered the parties to file statements regarding the matters in dispute by March 6, 2006, and set a further conference for March 9, 2006. [Doc. 101]. This led to an order directing ESNA to comply with the following by March 31, 2006:

- pre-acquisition due diligence report

- sales data for the period of June 1, 2002, through March 31, 2003, including maintenance and support fees

- results of a search of Exact's "E-synergy" database

- 2005 ESNA sales data for sales to customers claimed by Infocon to be its customers

- stipulation or other statement re. plaintiff and its or other related, potentially responsible entities; if stipulation not executed, defendant had leave to renew an earlier motion to compel.

[Doc. 104].

In addition to the foregoing, the order of March 10, 2006, required that the production be attested to by persons with knowledge, or on the basis of diligent inquiry as to the authenticity,

18

accuracy, completeness, and truthfulness of responses to interrogatories and requests for production. This provision was necessary in view of uncertainties as to whether prior responses had, in fact, be submitted by an authorized person with knowledge.

Once again, the deadline was disregarded without request for extension, explanation, or excuse.

By mid-May, 2006, Infocon still had not received the price information that ESNA was to have produced by March 31st.  All that ESNA had provided was an unverified printout labeled "Exact Software, North America, Detail of Revenue June 2002, through March 31, 2003." Rather than telling Infocon what ESNA has sold to whom for how much, etc., this document simply listed figures from licences, maintenance, and services.

Similarly, the search for documents via ESNA's "e-Synergy" system was largely unproductive. ESNA's counsel attributed the lack of success to defects in the keywords provided by Infocon. Here again, counsel seeking in good faith to provide the discovery it was required to provide would have worked with opposing counsel to ensure that production would be accomplished.

ESNA's counsel has not suggested that she and her client did not know what was being sought. In seeking it, they relied on Infocon's speculation about how the documents might be retrieved from their system.

Their attitude and approach were not appropriate. Just as a party asking for production of a paper document does not have to specify the room, cabinet, drawer, and file in which the document is to be found, a party calling for production of electronically created and kept information is not required to plot the search with exactitude. If the party from whom discovery is sought can

19

comprehend with reasonable certainty what is being asked for, it is up to it to access its storage system to retrieve the document. If problems are encountered due to uncertainty about what is being sought, the party conducting the search of its own system and records is to ask for further clarification.

In one respect, ESNA undertook to comply with the order to produce: it submitted a stipulation relating to the corporate relationship between ESNA and Exact. That document was not, however, signed or otherwise authorized on its face or attested to by a duly empowered corporate official. The absence of a proper attestation was in direct contravention of the March 10th order. Such noncompliance has never been explained, much less justified.

With regard to specification of when and how ESNA terminated its relationship with Infocon as an ESNA distributor, ESNA produced a statement that placed the termination "on or about September 26, 2003." That statement was not accompanied by copies of or reference to the documents or documents communicating notice of termination.

The statement was, moreover, inconsistent with an earlier sworn statement that termination had occurred in October, 2003.

How and why ESNA could neither specify when it terminated Infocon [if, such, in fact, occurred] nor produce the documents communicating such termination is inexplicable.

ESNA's continuing failure to comply with discovery as *ordered* led the undersigned on May 24, 2006, to order ESNA to respond to Infocon's pending motion for sanctions by May 31, 2006. ESNA's counsel assured me and counsel for Infocon that the deadline would be met.

That deadline, was, like almost every deadline previously imposed by the undersigned, ignored. And it was ignored like the many other disregarded deadlines in this case, without

20

explanation, a request for extension, or other gesture of acknowledgment that a court's order was being disobeyed.

This, in turn, led to an order in which I *sua sponte* extended the deadline for ESNA's response to the motion for sanctions to June 8, 2006. That order also stated:

> Failure of the plaintiff to comply with this order shall result in an order granting, without restriction, the motion to compel. If that occurs, but nonetheless fails to obtain by July 14, 2006, for defendant the complete discovery sought in its pending motion, the defendant shall have leave to file a motion for appropriate sanctions, including, inter alia, dismissal of plaintiff's complaint, striking of plaintiff's answer to the counter-complaint, entry of judgment by default against the plaintiff-counter-defendant, and the setting of further proceedings to determine the amount of damages to which the defendant may be entitled on its counter-complaint.

[Doc. 114].

Infocon's motion to compel thereafter became decisional. On review of the parties' contentions, the bumpy course of discovery to that point, reasons for the problems, and reasonableness of the discovery being sought, I ordered that by July 31, 2006, ESNA was to: "completely produce, as requested by Infocon, and do so in verified form as required herein:"

A. Sales information;

B. Data and information from the e-Synergy searches;

C. Due diligence reports;

D. Third Party Contracts;

E. A Verified Stipulation;

F. Documents relating to termination of its reseller status; and

G. End User Sub-License Agreements

[Doc. 119].

21

In addition to specifying the discovery to be provided, that order repeated my earlier warning to ESNA about the likelihood of sanctions, including judgment in favor of Infocon by default, if compliance was not timely and complete:

> If these expectations are not met, and substantial cause for the failure to meet these expectations is not shown, further sanctions, including, inter alia, exclusion of evidence and entry of judgment by default, shall be considered.

[*Id*.]

Rather than providing the discovery that was required of it, ESNA filed a supplemental brief. That brief, was, in essence, a motion for reconsideration of the order granting the motion to compel. ESNA contended that the documents covered by the order did not exist or it could not be required to create them or the data called for. ESNA sought, in essence, leave to conduct a computer search, or to have one conducted by experts to be obtained by Infocon [and paid for by ESNA] to see just what could be provided.

That response to the motion to compel was completely unsatisfactory. What was required was compliance, not further equivocation.

The June 26th order had also ordered ESNA to show cause by July 14, 2006, why the fees and costs incurred by Infocon in procuring that order and accomplishing the discovery ordered therein should not be borne by ESNA. ESNA ignored the deadline for showing cause [just as it was to ignore the July 31st deadline for providing discovery]. Ten days past the deadline for showing cause with regard to the shifting of fees and costs, ESNA filed a brief in response to the show cause order.

In addition to failing to acknowledge, much less explain the tardiness of its filing, ESNA's brief in response to the show cause order failed utterly to show cause why fee shifting should not

occur. While it repeated earlier assertions about the nonexistence of items it was to produce [contentions that I had previously found [and still find] to be implausible, ESNA also offered nothing to support its contentions except the conclusory contentions of its counsel. Because the brief in response to the show cause portion of the June 26th order was both untimely and insufficient, fees and costs were awarded to Infocon. [Doc. 131].[21]

### D. Failure to Retain Data

Added to its noncompliance with a series of court orders is the failure of Exact and/or ESNA to have retained backup tapes for the period covered by Infocon's request for discovery.

As I understand ESNA's representations [made by counsel, rather than by a knowledgeable corporate official under oath], Exact has developed, both for its own internal use and as a product for sale to the commercial public, its "e-Synergy" system for document storage and retrieval. Some, if not many of the documents being sought by Infocon would, apparently, have been maintained and thus have been accessible via this system.

---

[21]

 I had hoped that this ruling would, at long last, have led to compliance ESNA with its obligations, as memorialized for the last time in the June 26th order. In addition, I had hoped that that ruling, with its reminder about and emphasis on the need for counsel to support otherwise conclusory allegations, would have led to something other than the unsupported contentions in the response to the motion for default.

Those lessons appear not to have been learned. Much, if not almost all of the required discovery has not been forthcoming. The final deadline was utterly disregarded without acknowledgment, explanation, or excuse. The response to the motion for default is accompanied by several exhibits, including many that appear to respond not to the motion for default, but to the discovery orders. To the extent that they do so, their submission at this point is too little, too late. For all too long and all too often ESNA disregarded deadlines and orders. What matters now is what ESNA has to say by way of explanation and justification. Its response to the motion for default fails to fulfill that obligation.

Many of the discovery conferences involved discussion of the e-Synergy system and its potential as a source for otherwise unavailable documents. It was not, however, until July 24, 2006, that ESNA's counsel suggested to counsel that the backup tapes no longer exist for the period covered by Infocon's discovery requests. That circumstance was first called to my attention, and confirmed by ESNA's counsel on August 4, 2006.

That data pertinent to this litigation was not preserved, and appears to have been destroyed not only during the pendency of this lawsuit, but, quite possibly, after discovery requests had been submitted by Infocon, is neither comprehensible nor acceptable.

Most importantly, with regard to the pending motion for default, ESNA has offered no affidavit or other evidence about how and why the data was destroyed. Did destruction occur without actual notice of the need to preserve; if so, why was Exact not on notice of the need to preserve the data; was destruction in accordance with an established protocol or timetable; if not, why were established procedures not followed?

Rather than giving sworn answers to these and other possible questions about what happened to the data and why, ESNA has failed completely to respond to the allegations of deliberate spoliation. In this instance, and under the circumstances, its silence must be viewed as acceptance of the worst of the adverse inferences that can be drawn about its conduct.[22]

---

[22]

 ESNA's response to the motion for default asserts that there is a "fundamental flaw" in Infocon's claim of spoliation. ESNA contends that "it may be possible for a qualified forensic computer expert to determine whether there are any records missing" and that one can "simply check if the sequential numbered document is missing." [Doc. 150 at 15]. ESNA also challenges Infocon's selection of an expert to conduct the examination.

Were it, in fact, so simple to ascertain whether particular documents can be retrieved, ESNA should have seen to it that such determination was made promptly after receiving the request for production.

Following the disclosure about the destruction of the backup tapes, and in light of the failure of ESNA to have complied with prior orders regarding discovery despite warnings in those orders as to the consequences of noncompliance, this court granted leave to Infocon to file the instant motion for entry of judgment by default as to all claims and counterclaims in its favor and against ESNA.

### E. ESNA's Response to Infocon's
### Motion for Judgment by Default

Infocon has submitted a detailed review of the problems it has encountered in securing discovery from ESNA and this court's response to those problems. ESNA's response to the motion does not meet the motion head-on. As noted in the discussion, *supra*, of the categories of information and documents sought, ESNA's point-by-point response fails to explain why production did not occur when first requested and/or ordered by this court, or why deadlines were consistently disregarded.[23]

---

Likewise, ESNA's response does not indicate what steps it could have taken to attempt to retrieve the documents even if they had been deleted from the computer on which they were originally prepared or stored. At this stage ESNA's obligation, if it wishes to avoid the sanction of default, it must explain its persistent and protracted failure to comply with orders commanding production – instead of stating how the materials might be recovered only if *Infocon, rather than it*, had acted differently and with greater diligence.

[23]

After initially suggesting somewhat indirectly that Infocon cannot prevail on its claims, ["Infocon's claim .  .  . is belied"; "the contract documents completely refute Infocon's claim"; A "letter directly undercuts what Infocon posits"; "maintenance and support has been provided"; Infocon "has not pointed out, .  .  ., any contractual language that would support its claim" [Doc. 150 at 4, 5]], ESNA argues directly that Infocon cannot prevail on its claims [*id*. at 18-27]. It also renews its assertion, rejected in my ruling against it on its motion to dismiss [Doc. 59], that Infocon cannot concurrently assert claims for breach of contract and fraud. [Doc. 150 at 20-21]. As noted earlier in this opinion, whether Infocon can prevail on the merits does not matter. Before that question arises, Infocon is entitled to discovery. It has not received discovery which ESNA has been repeatedly ordered to provide. Absent compliance with my discovery orders, ESNA is not entitled to raise

Even where ESNA asserts that it has provided the discovery, its representation is conclusory, and fails to specify exactly what was produced, and, most importantly with regard to the pending motion for default, when production occurred.

To some extent, as noted variously above, ESNA attempts to shift the blame and responsibility for its nonperformance to Infocon. The time for doing so is long past, given the series of discovery conferences and order that preceded the motion for default.

ESNA's response, moreover, is largely an attempt to challenge the merits of Infocon's claims or have this court revisit issues that have previously been adjudicated in Infocon's favor.

ESNA's effort to defend its noncompliance with a series of discovery orders by claiming that Infocon cannot prevail on the merits is entirely off the mark. ESNA is not faced with a summary judgment motion. It is, rather, faced with being held accountable for consistently missing deadlines and consistently failing to perform obligations mandated by this court.

Instead of claiming that Infocon cannot prevail on the merits, it is incumbent on ESNA to justify its failure to comply with its discovery obligations and this court's orders mandating such compliance. Given the consistent and repetitious character of ESNA's noncompliance, ESNA's task is difficult and unenviable. Nonetheless, the burden is on it to explain why it did not do what it failed to do.

ESNA has not done so. Whether ESNA has chosen its alternate, misdirected path in the direction of the merits of Infocon's claims out of ignorance of what is at issue, inability to explain itself, or with an intent to mislead this court is immaterial at this point. What matters is that ESNA's

---

questions about the merits of Infocon's claims. Indeed, by refusing to provide discovery, even after being ordered to do so, it can be viewed, and is being viewed, as having forfeited any right it might otherwise have had to raise questions about the merits of Infocon's claims against it.

response does not, in essence, address whether its misconduct should be sanctioned, and, if so, just how severe a sanction that misconduct deserves.

The only concession to the reality of its misconduct is to be found in the last paragraph of ESNA's response to the motion for default: "Ultimately, it must be acknowledged that there are deficiencies in the discovery responses."

To paraphrase Winston Churchill: Some deficiencies. Some acknowledgment.

### F. The Basis for Sanction and
### the Need for a Show Cause Hearing

Rule 37(b)(2) of the Federal Rules of Civil Procedure authorizes entry of "'such orders ⋯ as are just' with regard to a party's failure to 'obey an order to provide or permit discovery, including an order made under [Rule 37(a), Motion for Order Compelling Discovery].'" *Reg'l Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 153 (6th Cir.1988). Permissible sanctions include "[a]n order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." Fed. R. Civ. P. 37(b)(2).

Dismissal of a party's complaint, especially when joined with entry of judgment by default against the party on a counterclaim, is a drastic sanction, and one that should be considered with caution and entered only in extreme cases. *See, e.g., Reg'l Refuse,* 842 F.2d at 154 (6th Cir. 1988) ("the most severe in the spectrum of sanctions"); *Patton v. Aerojet Ordnance Co.*, 765 F.2d 604, 607 (6th Cir. 1985) (citing *Societe Internationale v. Rogers*, 357 U.S. 197 (1958)) ("Dismissal of an action for failure to cooperate in discovery is a sanction of last resort.").

The cornerstone on which a default for noncompliance with discovery requirements and orders rests is "wilfulness, bad faith, or fault." *Patton,* 765 F.2d at 607. Where such is found, and

27

where the party had the ability to comply, but failed to do so, default is an appropriate response. *See, e.g., Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990) (dismissal "or entry of default judgment" not an abuse of discretion if a party has the ability to comply with discovery orders but fails to do so).

The Sixth Circuit has upheld default judgments for discovery abuses that were equally or less severe than ESNA's. In *Family Resorts of America, Inc. v. Monea*, 1992 WL 174539, at *1 (6th Cir.), the court approved entry of default against a *pro se* defendant who requested various extensions for discovery deadlines, answered interrogatories in handwriting, and failed to produce documents responsive to two sets of document requests after the court had ordered production.[24]

Other cases have likewise held that comparable or less severe discovery abuses than those in this case justify entry of a default judgment. *See, e.g., Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995) (dismissing complaint with prejudice where plaintiff "failed to comply with four discovery orders of the court, failed to appear for a properly noticed deposition, and never sought any type of protective order from the court"); *Tech. Recycling Corp. v. City of Taylor*, 2006 WL 1792413, at *6 (6th Cir.) (finding default judgment proper when party failed to comply with four court orders to produce discovery); *Ndabishuriye v. Albert Schweitzer Soc'y, UNITED STATES, Inc.*, 2005 WL 1386475, at *5 (6th Cir.) (finding default proper when party caused delay, failed to produce discovery after court orders and produced no financial information whatsoever); *Bradbury v. Township of Plymouth*, 1997 WL 76187, at *6 (6th Cir.) (upholding district court's response to party's failure "to properly answer the defendants' interrogatories, failed to respond to the

---

[24] ESNA mimicked the discovery abuses noted in *Family Resorts* (delay, failure to respond to document requests, failing to follow established procedures for discovery) several times over, and it also failed to preserve data that it was required to maintain.

defendants' motion to compel, failed to comply with the district court's order to compel, failed to respond to the defendants' motion to dismiss, and . . . failed to appear at [a] dismissal hearing"); *CSX Transp., Inc. v. May*, 1990 WL 197834, at *1-2 (6th Cir.)  (default proper for failing to provide complete answers to interrogatories and failing to file responsive briefs).

When evaluating the propriety of dismissal or default as a sanction, a court is to consider whether: 1) failure to cooperate in discovery is due to wilfulness, bad faith, or fault; 2) the party whose efforts to obtain proper discovery have been frustrated was prejudiced; 3) the sanctioned party was on notice that failure to cooperate could lead to default; and (4) less dramatic sanctions would be effective. *See, e.g., Reg'l Refuse,* 842 F.2d at 155. Similar factors are taken into account when striking a pleading under Fed. R. Civ. P. 37(b)(2)©. *See United States v. Reyes,* 307 F.3d 451, 458 (6th Cir. 2002) (affirming district court's striking of complaint); *Pauley v. United Operating Co.*, 606 F. Supp. 520, 528-530 (E.D. Mich. 1985) (entering default against defendant on complaint and striking defendant's counter-complaint).

A court must, moreover, not sanction a party where the fault lies with inattentive, inept, or incompetent counsel, which ensures that a party does not suffer for the ineptness or incompetence of its counsel.  *See, e.g., id.; see also Patterson v. Grand Blanc Twp.*, 760 F.2d 686, 688 (6th Cir. 1985) (dismissal deprived plaintiff of his day in court due to the inept actions of counsel); *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980) ("Dismissal is usually inappropriate where the neglect is solely the fault of the attorney.").

I cannot, at this point, ascertain whether the extent to which misconduct so amply apparent in the record is due to willfulness or bad faith on the part of ESNA, its counsel, or both.[25] Before I

---

[25] Accompanying the notice of appearance by new counsel was a motion to set a case management

can sanction ESNA, I must determine whether it or its counsel is at fault for the noncompliance with my orders. To that end, I will set a hearing at which will have an opportunity to show cause why it should not be sanctioned. A principal objective of that hearing will be to determine the cause[s] and motive[s] for noncompliance with my orders, and where the consequences shall lie.

The prejudice to Infocon is palpable. For nearly two years its efforts to procure information crucial to its affirmative defenses and counter-claims have been as unsuccessful as they have been persistent. The information at issue is not ancillary to its case; most of it goes to the heart of one or more of its claims. Without it, it would not have a fair chance of prevailing at trial, or, perhaps, even surviving summary judgment.

The time and sums expended in this effort have been substantial. In the meantime, the trial date ever recedes into the indeterminate future. The prejudice to Infocon in this case has been clear and substantial, not uncertain or insignificant.

**Conclusion**

For the foregoing reasons, it is hereby

ORDERED THAT:

1. A hearing, at which ESNA shall show cause why its complaint should not be stricken and dismissed, with prejudice, and default entered against it as to Infcon's counterclaims, is hereby set for Tuesday, February 27, 2007, commencing at 8:30 a.m. before the undersigned;

2. Discovery relating to said hearing to be completed by February 15, 2007;

---

conference. In reply to Infocon's response to that motion, ESNA has submitted an affidavit by its C.E.O., James Kent, in which he states that Ms. Grasso failed to inform ESNA of this court's orders or the pendency of Infocon's motion for default. [Doc. 166-2].

30

3. Leave granted to the parties, if they desire, to submit brief prehearing statements of issues, witnesses, and evidence, and applicable law on or before February 23, 2007; and

4. ESNA to reimburse Infocon for all attorneys' fees, costs, and expenses reasonably incurred by Infocon in preparing for and participating in the show cause hearing and related proceedings, including post-hearing briefing, if any; and

5. Pending further order, ESNA to reimburse Infocon for all attorneys's fees, costs, and expenses relating to further discovery in this case; leave granted to Infocon to bill ESNA monthly for said reimbursement.

So ordered.

<u>s/James G. Carr</u>
James G. Carr
Chief Judge

31