IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Exact Software N.A., Inc.,                                 Case No. 3:03CV7183

            Plaintiff

v.                                                                   ORDER

Infocon Systems, Inc.,

            Defendant

This case began its long life as a collection action by a software provider, Exact Software, N.A. [Exact] against one of its distributors, Infocon Systems [Infocon]. After protracted litigation, much of it involving discovery disputes and noncompliance by Exact with various discovery orders,[1] Exact paid $4,000,000 to settle their litigation.

Sometime prior to the settlement, Infocon had retained additional counsel, who has continued to represent it post-settlement. For a period of time, neither Infocon nor its new counsel informed Infocon's original lawyers, J. Fox DeMoisey, that new counsel had been retained. On consummation of the settlement with Exact, Infocon notified DeMoisey and John Carey, its former local counsel, that it had new counsel and they were terminated.

---

[1] Which, in turn, has led to litigation between Exact and its former counsel, whom, according to my understanding, Exact has charged with professional misconduct and malpractice.

This led DeMoisey to file an attorney's lien against the proceeds of the settlement. On filing of the lien, I ordered payment of the settlement proceeds into the court's escrow. Infocon objected, and demanded payment of the funds to it.

On becoming aware of these events, I held a status conference on September 18, 2007. In light of what I learned at that conference, I concluded that it was likely that DeMoisey, regardless of the disagreements between him and Infocon, would recover some significant portion of his lien from Infocon. I ordered that he receive $200,000 from the escrowed funds. In addition, I concluded that Infocon should receive $2,500,000 of the remainder. I also concluded that Carey should receive $38,408.86 for his services. [Doc. 232].

In the meantime, Infocon has filed a malpractice action against DeMoisey and Carey in Kentucky. Due to the pendency of that action, and the concurrence of the issues, at least in part [*i.e.,* whether, and to what extent DeMoisey is owed anything more by Infocon], I vacated the trial date here *sine die* pending entry of final judgment in the Kentucky litigation.[2]

Pending is a motion by Infocon for an order requiring DeMoisey either to repay the $200,000 into the court's escrow, or to post a third-party surety bond as a condition of retaining those funds. [Doc. 340]. DeMoisey opposes the motion. For the reasons that follow, it shall be denied.

## Discussion

In support of its demand that DeMoisey either regurgitate the funds or post surety, Infocon argues that I: 1) improperly ignored its objections to the original payment; 2) failed to conduct an

---

[2] Infocon complains, and understandably so, that DeMoisey waited until the eve of trial in this court on his attorney's lien claim before seeking to stay proceedings here. Whether he should have made that request sooner or not, it simply made no sense for me to proceed to have only one part of the parties' overall dispute adjudicated here.

adequate evidentiary hearing, made a "summary disposition," and did not make appropriate findings before authorizing the payment. Infocon justifies the filing of this motion nine months after my order on the basis of "changed circumstances."

Those "changed circumstances" are that I granted DeMoisey's request to vacate the trial on his attorney's lien claim.[3]

Infocon's motion at best misreads – if it does not flat out misstate – the record of the September 18, 2008, conference which preceded my order releasing the funds to DeMoisey.

As any reader of the pertinent portions of the transcript of that session can plainly discern, Infocon did *not* object to release of the monies to DeMoisey.

| | |
|---|---|
| The Court: | Well, let me ask you this: How much is in dispute, and why can't I today go ahead and authorize the Court to pay out to Infocon its money that's been paid by Exact, and it is paid ultimately - it was paid, that's the settlement agreement between Exact and Infocon that Infocon gets $4 million, and you'd like to get that money right? |
| Mr. Nijhawan:[4] | We'd just like to get *our share*. *That's all there is to it.* |
| Mr. Ostermiller:[5] | We want *our net amount*, Judge. |
| The Court: | Let me ask you this: What today, how much is - do you want with him [Mr. DeMoisey]? *What's your claim or contention?* |
| Mr. Blankenship: | This is going on 40 days. We've been trying to find out what the exact [cause] for [our] discharge was and what is in controversy. We have tried every means possible to try to find that out *We've never been told*, |

---

[3] Infocon's motion does not explain why it waited more than three months after the circumstances changed [on entry of my stay order] to file the instant motion. Instead of waiting, Infocon should have then asked me to condition entry of the stay on what it now wants me to do. But it did not do so.

[4] President of Infocon.

[5] Then new [and current] counsel for Infocon.

>A, why Mr. DeMoisey was discharged and Mr Carey or, B, *the exact amount that is in controversy*. We would love for them to answer the question what is in controversy.

[Tr. 9/18/07, 6-7] [Emphasis added].

At this point some things were clear. First: Infocon wanted me to release its *share* – the *net* of the settlement of $4,000,000. In other words, what would be left *after* DeMoisey's attorney lien was satisfied. That's what its President and counsel clearly were telling me, and that's certainly what I understood.

Second: neither DeMoisey, Carey nor their counsel knew why Infocon had discharged them.

Third: nor did they know "the exact amount that is in controversy" – just how much of the amount being claimed by DeMoisey – one third of the settlement – was in dispute.

Infocon did not respond to the implicit demand that it tell its former lawyers the reasons for its actions. Nor did it respond to the question about how much of the asserted fee it was challenging. Most importantly, it did not tell either them or me that it believed that it had a potential claim against DeMoisey that would cancel any fee obligation entirely. Nor did it tell me or them that it was about to sue DeMoisey and Carey in a Kentucky state court.

The conversation during the status conference continued.

The Court:     Now I gather what we're now talking about is the dispute regarding ultimately attorney's fees And from your standpoint, if I may ask, and *what was - was your understanding [–] a contingency understanding*?

Mr. Hughes :[6]     Was *one third*..There were expenses that were to come off the top and one-third of the net.

[*Id*. at 19] [Emphasis supplied].

---

[6] Infocon's Vice President.

4

In light of this exchange with Infocon's Vice President officer, I was of the understandable understanding that Infocon and DeMoisey had a one-third contingent fee agreement.[7]

In light of that exchange, I decided to release a portion of the funds to DeMoisey:

The Court: It seems to me that it would not be inappropriate for me to direct the release of perhaps a couple hundred thousand dollars.. I mean, this case was filed in 2003 Settlement was effectuated, proceeds were paid in September. I can't imagine that there would be much dispute that Mr DeMoisey played a very significant role in ultimately accomplishing a favorable outcome I've lived with this case, and I'm very familiar with it Lord knows I spent a lot of time on this case.

Mr.. Ostermiller: I appreciate that too, Judge. And also, as your Honor is very well aware, activity that occurs in Court, it's even unfair to use the comparison of an iceberg because about nine to 11 percent of an iceberg will poke above the surface The reality is for every hour or two hours that may be spent in Court, there may be ungodly amounts of time that go outside of that And Your Honor's not really heard all of that And *so I can understand how your Honor would come to certain conclusions at this juncture*, but these are matters that do need to be appropriately addressed.

The Court: I'm going to release some of those funds.

Mr. Ostermiller: *And I understand that, Judge It was only - I didn't want, like your earlier manage reference, that my silence on a point be viewed as an acknowledgment.*

[*Id*. 33 - 35] [Emphasis supplied].

Infocon now claims that its lawyer's statement – made after he had twice acknowledged that he "understood" why I was contemplating releasing substantial funds to DeMoisey – that he "didn't want, . . ., [his] silence on a point to be viewed as an acknowledgment," was an objection to what I was doing and how I was doing it.

---

[7] Infocon has since asserted that there was no such agreement. Mr. DeMoisey has also in the meantime waived any claim of entitlement on a contingent fee basis. He seeks, instead, to be paid on the basis of *quantum meruit*. But at the time I had the clear impression that the parties had a one-third contingency agreement.

5

Infocon and his counsel ask me to heed that "objection," which it now claims I "ignored" at the time.

To put my response to that request most simply: I cannot ignore something that I know nothing about.

Any fair reading – indeed, the *only* fair reading – of the transcript of the September 18, 2007, session shows acquiescence in, *not* opposition to what was occurring.

Contrary to any present suggestion by Infocon, it had ample opportunity to call my attention to the concerns it now voices. Counsel for DeMoisey made absolutely clear that he and DeMoisey had very little, if any idea as to just what was going on. He pointed out that Infocon had never told DeMoisey why it fired him.

And – of greatest importance to the instant motion – DeMoisey's counsel made clear that he and his client did not know how much of the fee lien Infocon was disputing.

Infocon could and should have spoken up then and there – and told me and DeMoisey and his counsel that it didn't think he was entitled to anything and it was going to sue for malpractice.

As the session progressed, Infocon could and should have objected specifically and clearly if it felt that I was headed in the wrong direction and taking the wrong route to get there. It did not: indeed, as noted, Infocon's counsel made clear that he understood what I was doing and why I was doing it.

To the extent he may have sought to express any reservation or exception by indicating he didn't want his silence to be, in effect, acceptance, Infocon's counsel was even then vague – merely referring twice to some unspecified "point" of possible exception.

It is clear by hindsight that Infocon and its counsel were being, at best, cagey with me and its opponents. It kept silent when called on to speak about what had brought it to part ways with its former counsel. It made no demand, much less expressed any reasons in support of any such demand, that nothing be released to DeMoisey.

If Infocon wanted an evidentiary hearing, findings of fact and conclusions of law, and something other than "summary disposition" before I released the funds to DeMoisey, it should have asked then, rather than waiting until now. Whether it now likes it or not, its silence communicated acceptance.

To be effective, an objection – in addition to being uttered – must be clear, cogent and comprehensible. The party must provide an explanation for why it is objecting. *Cooper v. U.S. ex rel. C.I.R.*, 2008 WL 2325644 (5th Cir.) (Unpublished Disposition) ("A district court is entitled to know why a party objects. When a party fails to offer at least some cogent explanation for an objection, any claimed error is forfeited."); *Sisco v. City of Gersham, OR*, 2007 WL 594922 (D.N.D.) (rejecting objection to Magistrate's Report and Recommendation because objection consisted of "nothing more than a string of legalese phrases, with no succinct or cogent statement of the Plaintiff's objection"). Otherwise it fails in its essential purpose – namely, to alert the judge that he or she is about to violate the rules of procedure or evidence, otherwise breach the law or reach an improper or unsupportable result. *See, e.g., Wilmer v. Hinkle*, 180 W. Va. 660, 663 (1989) ("The fundamental purpose of an objection to evidence is to bring to the court's attention potentially inadmissible evidence so that the court may make a ruling on the question."). The burden is on the objecting party to alert the judge to the problem. *Thomas and King, Inc. v. Jaramillon*, 2009 WL 649073, at * 3 (E.D. Ky.) (The burden is on the opposing party to object to the improper evidence;

7

failure to object constitutes a waiver." . . . The court found that although plaintiff noted insufficiency of evidence, plaintiff had not objected to the evidence. It held the "opposing party must at least highlight the evidentiary problem with the statement.").

Random, vague, ambiguous statements do not do the job. *United States v. Polasek*, 162 F.3d 878, 883 (5th Cir. 1998) ("A loosely formulated and imprecise objection will not preserve error."); *Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1399 (6th Cir. 1995) ("[V]ague references fail to clearly present the objection in the district court so as to preserve the issue for appellate review."). But that's the only way accurately to describe what Infocon now claims was its "objection" to what was happening.

**Conclusion**

Infocon twice kept silent when it should have spoken. It said nothing to give me pause during the September 18, 2007, hearing. Instead, it stood nearly mute as I did what it now claims I should never have done – released a portion of the escrowed funds to its former lawyer.

Infocon next kept silent on this issue when it was vigorously protesting DeMoisey's January, 2008, request to stay proceedings in this court. Had it then asked me to condition granting that request on the relief it now seeks, I certainly would have heard it out, and sought to learn whether there was good cause to grant that relief.

If Infocon is, in fact and as it contends, at risk, if it prevails in the Kentucky litigation, of never recovering the $200,000, I'm not the one to blame. Or the one from whom to seek relief.

It is, therefore,

ORDERED THAT the motion of Infocon Systems, Inc. for J. Fox DeMoisey to Post Surety for Advanced Funds [Doc. 340] be, and the same hereby is denied.

8

So ordered.

                                                                   s/James G. Carr
                                                                   James G. Carr
                                                                   Chief Judge