## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Exact Software,                                              Case No. 3:03CV7183

          Plaintiff

    v.                                                        **ORDER**

Infocon Systems, Inc.,

          Defendant


This case began its long life as a collection action by a software provider, Exact Software, N.A. (Exact) against one of its distributors, Infocon Systems (Infocon). After protracted litigation, Exact paid Infocon $4,000,000 to settle the litigation.

On reaching its settlement with Exact, Infocon notified its lawyer, J. Fox DeMoisey, that it had retained new counsel. This led DeMoisey to file an attorney's lien against the proceeds of the settlement.

Pending is a series of motions *in limine* regarding the proper *quantum meruit* adjudication of that lien. [Docs. 351, 352, 353]. Jurisdiction is proper under 28 U.S.C. § 1367.

For the reasons that follow, the motions shall be granted in part and denied in part.

### Background

This case has a protracted and complicated history, a full recitation of which is unnecessary to deal with the issues at hand. In short, DeMoisey, a Kentucky attorney, formerly represented Infocon in its litigation with Exact. He seeks remuneration for his services while representing Infocon, a Kentucky business, under a theory of *quantum meruit* he performed while representing Software—a dispute that resulted in a four million dollar settlement in Infocon's favor.

After settling with Exact, Infocon and its principals filed a malpractice action against DeMoisey in Jefferson County, Kentucky. I granted DeMoisey's motion to refer his *quantum meruit* claim to that court. I also transferred DeMoisey's claim for recovery based on a putative express one-third contingent fee agreement between him and Infocon.

In light of DeMoisey's contentions, I ordered Infocon to deposit a portion of the settlement proceeds with this Court's Registry. I did so to ensure that funds would be available to compensate DeMoisey on final adjudication of the parties' fee dispute.

On October 22, 2009, the Jefferson County Circuit dismissed Infocon's malpractice claims on statute of limitations grounds. On August 4, 2010, that court next held that no valid, enforceable oral or written fee agreement existed between DeMoisey and Infocon, and that therefore DeMoisey's fee claim must be determined solely on a *quantum meruit* basis.[1]

Adjudication of DeMoisey's charging lien is the only is the only remaining issue before this court. In anticipation of that adjudication, the parties have briefed their dispute as to the right to a jury trial and have filed multiple motions *in limine*.

DeMoisey moves to strike Infocon's request for a jury trial. [Doc. 353]. He also seeks to prohibit Infocon from asserting the same Kentucky malpractice and misconduct allegations in this *quantum meruit* action. [Doc. 352]**.**

Infocon moves to:  1) preclude DeMoisey from presenting evidence of or relying on the alleged contingent fee agreement; and 2) cap any *quantum meruit* to which DeMoisey may be entitled at the number of hours DeMoisey previously submitted. [Doc. 351].

---

[1] Though Infocon and its principals have appealed to the Kentucky Supreme Court, the pendency of that appeal does not affect the finality of the October 22, 2009, and August 4, 2010, opinions for the purposes of *res judicata*. *Stemler v. City of Florence,* 126 F.3d 856 (6th Cir. 1997).

I address each motion in turn.

## Discussion

## I. Jury Demand

Infocon's counsel has requested that a jury determine the value of DeMoisey's charging lien. DeMoisey argues that Infocon has no right to jury determination of this equitable claim, and moves to strike Infocon's request. [Doc. 353].

DeMoisey seeks to recover *quantum meruit* relief, "whereby equity comes to the aid of one who has conferred some benefit on another without receiving just compensation for the reasonable value of services rendered." *QSI-Fostoria D.C., LLC v. GE Capital Bus. Asset Funding Corp.*, 389 Fed. App'x. 480, 490 (6th Cir. 2010) (citing *Aultman Hosp. Ass'n v. Cmty. Mut. Ins. Co.*, 46 Ohio St. 3d 51, 55 (1989)). To recover in *quantum meruit*, a claimant must show that he "conferred a benefit on another and that the circumstances render it unjust and inequitable to permit the other to retain the benefit without paying for it." *Id.* (citing *Chrapliwy v. Sawyer Towing*, 179 Ohio App. 3d 215, 219 (2008)).

The right to a jury trial under the Ohio Constitution is inviolate, but not absolute. *E.g., State ex rel. Dann v. Meadowlake Corp.*, 2007 Ohio 6798, ¶43 (Ohio App.). As a general rule, "it remains the clear consensus of law in Ohio that equitable claims are not triable as of right to a jury." *Turturice v. AEP Energy Servs.*, 2008 Ohio 1835, ¶20 (Ohio App.) (holding that no right to a jury attached to the appellant's equitable claims for monetary recovery in *quantum meruit* or unjust enrichment on a breach of contract claim).

3

Pursuant to Article I, § 5, of the Ohio Constitution and O.R.C. § 2311.04,[2] a demand for a money judgment usually entitles a plaintiff to a jury trial. *State ex rel. Dann, supra* at ¶44. Infocon asserts that an equitable *quantum meruit* claim for pecuniary recovery only is an "at law" proceeding that is to be tried to a jury.

Of importance here, however, is that DeMoisey seeks remuneration out of a charging lien, which is a lien against a client's judgment for the payment of attorney's fees. *Garrett v. City of Sandusky*, 2004 Ohio 2582, ¶24 (Ohio App.). "Ohio courts recognize an attorney's equitable right to enforce a lien on a client's judgment, decree or award, for payment of attorney fees earned in the prosecution of litigation to judgment, and will lend their aid to maintain and enforce such a lien." *Id.* (citing *Mancino v. City of Lakewood*, 36 Ohio App.3d 219, 224 (1987)).

An attorney's charging lien "is an equitable right to be paid for his services out of the proceeds of the judgment obtained by his labor and skill." *Walcutt v. Huling*, 5 Ohio App. 326, 332 (1913), *aff'd*, 92 Ohio St. 518 (1915);[3] *see also Perry v. Kroger Food & Pharmacy*, 165 Ohio App. 3d 16 (2005).

As the trial court in *Huling* explained:

The lien of an attorney upon a judgment is an equitable lien, and is upheld upon the theory that his services and skill produced it. All the decisions which recognize the rule always speak of it as an equitable lien, right or privilege. It is not property in the

---

[2] O.R.C. § 2311.04 provides:

Issues of law must be tried by the court, unless referred as provided in the Rules of Civil Procedure. Issues of fact arising in actions for the recovery of money only [ .  .  . ], shall be tried by a jury, unless a jury trial is waived, or unless all parties consent to a reference under the Rules of Civil Procedure. [ .  .  . ] All other issues of fact shall be tried by the court, subject to its power to order any issue to be tried by a jury, or referred.

[3] The statutes in that case were GC §§ 11379, 11380, predecessors of § 2311.04.

> thing which gives a right of action at law. It is a charge upon the thing which is
> protected in equity.

*Huling v. City of Columbus & John W. Walcutt,* 13 Ohio N.P.(n.s.) 409 (1912) (quotation omitted).

Though Demoisey's action seeks monetary recovery only, courts distinguish actions for the sole purpose of enforcing an equitable lien from actions at law with respect to the right to a jury trial. *See, e.g.*, 64 Oh Jur. Jury § 33 ("A jury trial is not required in actions or proceedings brought for the sole purpose of enforcing a lien, even though an issue of fact may be joined on a plea by a garnishee."); 8-38 Moore's Federal Practice - Civil § 38.31 ("An action to foreclose a lien is equitable in nature, and there is no right to jury trial of the issues in such an action. This is true with regard to all types of liens, including . . . attorneys liens [and] judgment liens."); *see also Rosen man & Colin v. Richard*, 850 F.2d 57, 60 (2d Cir.1988) ("In the context of both attorneys' liens and other liens, such actions have repeatedly been regarded as equitable in nature so that no jury right attaches.").

Indeed, Ohio courts have long held that no right to a jury trial attaches to actions to enforce a lien for attorney's fees. *See, e.g., Ireland v. Cheney,* 129 Ohio St. 527 (1935); *Walcutt, supra*, 5 Ohio App. 332 ("The court administering the fund will intervene for [the attorney's] protection, and award him a reasonable compensation therefrom . . . . The court may in such case determine itself, or through an auditor, what is a reasonable fee, without referring the matter to a jury.")

"This principle is sound and wholesome;" explained the Ohio Supreme Court, "otherwise every cause in which is involved the determination of the amount due and owing to a lienholder out of a fund in court awaiting distribution, would not be cognizable in equity but would require a jury

trial for the determination of the amount to be disbursed to such a one claiming an interest in the fund." *Ireland, supra,* 129 Ohio St. at 541.[4]

DeMoisey's action to foreclose on the charging lien is equitable in nature despite the pecuniary relief requested. Thus, there is no right to jury trial of the issue of the reasonable value of DeMoisey's services. DeMoisey's motion to strike the jury request is granted.

## II. Fee Agreement Evidence

Infocon argues, and DeMoisey does not dispute, that the August 4, 2010 Jefferson Circuit Court opinion precludes him from recovering under a contingency fee agreement. Thus, absent a valid contract providing another measure of compensation, Infocon owes DeMoisey the fair value of his services. Restat. 3d. of the Law Governing Lawyers, § 39.

However, DeMoisey characterizes the Jefferson Circuit Court opinion as merely holding that such an agreement was unenforceable, and not that "the terms of the written agreement ('one-third after costs') were ever unfair or 'unreasonable.'" [Doc. 354 at 4]. Accordingly, DeMoisey seeks to rely

---

[4] The cases Infocon cites do not compel a different outcome. For example, in two of those cases the jury was presented with evidence of both legal and equitable claims. *Novomont Corp. v. Lincoln Electric Co.*, 2001 W.L. 1352641 (Ohio App. 2001) (breach of contract, *quantum meruit*, unjust enrichment and negligent misrepresentation); *RPM Management v. Apple*, 943 F.Supp. 837 (S.D. Ohio 1996) (breach of contract, copyright infringement and *quantum meruit*). Where legal and equitable claims are intertwined, the right to a jury trial on the legal claim, including all issues common to both claims remains intact. *Turturice, supra*, 2008 Ohio 1835, ¶13 (citing *Tull v. United States*, 481 U.S. 412, 425 (1987)).

Infocon's reliance *Landmark Commercial Realty, Inc. v. Developers Diversified Ltd.*, 163 F.3d 389 (6th Cir. 1998) is also misplaced. The Sixth Circuit in *Landmark* reviewed a case tried to a jury under theories of promissory estoppel and *quantum meruit*. Infocon argues that "[u]nder Mr. DeMoisey's argument in his Motion to strike jury request, there could have been no jury trial regarding the quantum meruit claim before this Court in *Landmark Commercial Realty*, although that is exactly what occurred." [Doc. 356 at 6]. Infocon neglects to mention that the Sixth Circuit reversed and remanded the case, directing the verdict. The trial court's conduct therefore is entirely without persuasive effect.

6

on the same evidence he presented in state court as evidence of the reasonable value of his services in *quantum meruit*.

DeMoisey notes that under the Kentucky Rules of Professional Conduct, one factor to weigh in determining the reasonableness of an attorney's fee includes whether the fee was fixed or contingent.[5] Ky. SCR 3.130 (1.5)(a)(8). However, the Supreme Court of Kentucky has clarified that the eight listed factors are neither exclusive nor relevant in every case. (Commentary to the Kentucky Supreme Court Rules).

Specifically, DeMoisey argues that "Infocon's principals' own statements in support of a 'one-third' attorney fee, and its decision to impose a contingency relationship (and the attendant risk) on Mr. DeMoisey instead of paying hourly fees, are in fact evidence of the 'reasonable value' of Mr. DeMoisey's services in *quantum meruit*." [Doc. 354 at 2].

DeMoisey contends, in essence, that he relied on Infocon's representation that he would be paid on a contingent basis, and therefore the equitable value of his services should include

_____

[5] Ky. SCR 3.130-1.5(a) provides:

A lawyer's fee shall be reasonable. Some factors to be considered in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
(5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent.

These are based on the model rules and are the same factors to consider under Ohio Rule of Professional Conduct 1.5(a).

consideration of the inherent risk of contingent fee representation. Had Infocon chosen an hourly fee arrangement, DeMoisey assures us, he would have taken care to log his services by the hour. Instead, Infocon chose a contingent relationship, "thereby shifting the risk of loss of value" to DeMoisey. [Doc. 354 at 11].

But DeMoisey was not duped by Infocon into a contingency arraignment. His assertion that he "could not have appreciated the risk" that Infocon would later dispute his fee is simply inaccurate. *Id*. He was responsible for confirming the fee arraignment. Not having done so, he assumed the risks of representing a client without a fee agreement in place. As the Jefferson Circuit Court found, after examining precisely the same evidence on which DeMoisey here relies, "he had no right to rely on his clients' seeming acquiescence to the contingency fee." [Doc. 351-1 at 9].

DeMoisey attempts to rely on cases in which a client, prior to recovery, terminates an attorney working under a valid contingency fee agreement. *See Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Scheller*, 629 So. 2d 947 (Fla. Ct. App. 1993).

In such cases, assuming the contingency occurs, the factfinder may consider the established contingent nature of the initial representation and accompanying risk in determining the *quantum meruit* value of the attorney's services. *E.g.,* Restat. 3d of the Law Governing Lawyers, § 40. Where a client discharges an attorney to collect the offered settlement and freeze the attorney out from the final contingency, the attorney ought to be able to recover the promised contingent fee.

But here, according to the Jefferson Circuit Court, there was no promised contingent fee. Instead, the facts of the case at hand are akin to those in *Alioto v. Hoiles*, 2010 WL 3777129, * 16 (D. Colo.). Though applying California law, the court's rationale in *Alioto* is persuasive. Because the agreement in *Alioto* was voidable, the court refused to consider, in determining a reasonable fee, the

contingent nature of a fee arrangement. *Id*.

The court emphasized that "[t]he deterrent and protective purposes of [the California Business and Professional Code] would be impaired if an attorney who was barred from enforcing a contingency fee agreement would nevertheless be entitled to a percentage of the recovery based on the contingent risk factor." *Id*. (quotation omitted).

As the court also noted:

> Quantum meruit, Latin words for "as much as is deserved," is a legal theory based upon the principle that a person should not be obliged to pay, nor should another be allowed to receive, more than the value of the goods or services exchanged. Thus, under the facts of this case, in which the Court has found that the Contingency Fee Agreement was voidable for failure to comply with the law of California, allowing the jury to in effect reinstate the Contingency Fee Agreement by awarding a percentage of Hoiles' recovery would violate both the purpose of Cal. Bus. & Prof. Code § 6147 and the intent of the doctrine of quantum meruit.

*Id*; *see also Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 70 (2d Cir. 2000) (under New York law, "an attorney is precluded from showing the value of his services by introducing in evidence an agreement that he is as a matter of law ethically barred from enforcing.").

Here, the Jefferson Circuit Court found that DeMoisey's submission of a contingency fee agreement to Infocon two years into his representation "failed to meet the minimum requirements of SCR 3.130(1.5)(b) and (c)," which require a lawyer who desires to represent a client under a contingency fee arrangement to submit it before or within a reasonable time. [Doc. 351-1 at 6].

This rule, the court noted, "helps to prevent the mischief and animosity that could arise if lawyers were allowed to set the percentage of the recovery they receive after substantial amounts of both time and effort have passed." *Id.* Thus, the court found the contingency fee arrangement unenforceable.

Accordingly, DeMoisey's evidence that Infocon orally agreed to the contingency fee

9

arrangement is irrelevant. Indeed, the Kentucky Bar Association has dealt harshly with attorneys who attempt to recover on an oral contingency agreement. *Kentucky Bar Ass'n v. Womack*, 269 S.W.3d 409, 413 (Ky. 2008) (attorney was suspended for thirty days and ordered to pay restitution where he charged and collected a contingency fee in the absence of a written fee agreement, despite fact that the attorney claimed that clients verbally agreed to said fee).

Allowing DeMoisey to recover, even indirectly on a *quantum meruit* theory, on the basis of the non-existent contingency fee agreement would violate both the purpose of the Kentucky Rule and intent of the doctrine of *quantum meruit.* Accordingly, DeMoisey is precluded from presenting evidence of the purported contingency fee agreement.

### IV. Relevance of Misconduct Evidence

DeMoisey moves to prohibit Infocon from asserting the same malpractice and misconduct allegations in this *quantum meruit* action as it presented in the Jefferson Circuit Court action. [Doc. 352].[6]

Infocon asserts that DeMoisey's misconduct—particularly his breaches of the Kentucky Rules of Professional Conduct—diminished the reasonable value of his services and provides an affirmative defense to Infocon's liability under DeMoisey's *quantum meruit* claim. As evidence of DeMoisey's alleged misconduct, Infocon has submitted two expert opinions and the August 4, 2010 opinion of the Jefferson Circuit Court.

DeMoisey argues that Infocon has not and cannot now allege it was injured by DeMoisey's alleged misconduct because Infocon voluntarily settled the underlying litigation with Exact Software.

---

[6] The court dismissed Infocon's malpractice allegations on summary judgment as beyond the statute of limitations.

Without resultant injury, DeMoisey contends that Infocon's allegations of misconduct are irrelevant in the context of the *quantum meruit* determination of his reasonable fee.[7]

DeMoisey would therefore exclude Geoffrey Stern's expert report as irrelevant because Stern's opinions do not address the fair valuation of DeMoisey's services.[8] DeMoisey asserts that "Infocon's allegations of unethical conduct—even if true—are not relevant to the issues attended to a 'quantum meruit' consideration. In sum, the allegations of unethical conduct do not connect to the issue of the value of the attorney's services as received and benefited [*sic*] to the concerned clients." [Doc. 352 at 28].

Infocon contends that the ethical shortcomings and fiduciary breaches of an attorney in the representation of a client are highly relevant and material considerations in determining the reasonable fee claim of that lawyer. [Doc. 351].

Infocon argues that when a lawyer seeks to recover from a client under *quantum meruit*, breaches of professional standards can be taken into account in assessing the true value of the attorney's services, even if no monetary value can be assigned to any particular ethical or fiduciary breach.

As explained above, the determination of *quantum meruit* value of services requires consideration of several diverse factors. Thus, attorney's fees are not to be measured solely by the

---

[7] DeMoisey's reliance on *Eakin v. United Technology Corp.*, 998 F.Supp. 1422 (S.D. Fla. 1998), for this proposition is misplaced, as that case dealt with a valid contingency agreement. In addition, DeMoisey's argument seems to turn on his contention that Infocon has failed to state an actionable malpractice claim. Infocon is not suing DeMoisey for malpractice in this proceeding.

[8] Mr. Stern's opinion identifies potential ethical and fiduciary breaches by DeMoisey, such as duplicate billing and failure to provide his clients with informed decision-making. DeMoisey does not appear to object to Judge McDonald's expert testimony.

11

amount of recovery, but should be determined based on the "extent and character of the work" the attorney performed. *Taylor v. Taylor*, 223 Ky. 799, 810 (1928).

Though DeMoisey asserts otherwise, breaches of fiduciary duty and unethical conduct may reduce the value of such services. A lawyer's improper conduct can reduce or eliminate the fee that the lawyer may reasonably charge, and "a tribunal will also consider misconduct more broadly, as evidence of the lawyer's lack of competence and loyalty, and hence of the value of the lawyer's services." Restat. 3d of the Law Governing Lawyers, § 37; *see also,* 16 Causes of Action 85 (2007) ("A client seeking to mitigate liability for the payment of attorneys' fees on a quantum meruit basis may interpose affirmative defenses to the action to recover fees, including . . . malpractice or misfeasance committed by the attorney in representing the client."); *U.S. v. 36.06 Acres of Land*, 70 F. Supp. 2d 1272, 1277 (D.N.M. 1999) ("[A] reasonable fee under circumstances where the ethical rules have been breached by not putting the fee agreement in writing should be less than a reasonable fee in circumstances where no ethical breach has occurred.").

DeMoisey's insistence that Infocon allege damages thus conflates the concept of *quantum meruit*—which requires the court to determine the reasonable value of DeMoisey's services—with a setoff for damages, or a forfeiture of fees as a sanction.[9] Indeed, DeMoisey cites a series of cases holding that mere misconduct is insufficient to warrant forfeiture of an attorney's fee. But the primary question is not whether DeMoisey's misconduct merits forfeiture, but rather the reasonable value of the service DeMoisey provided.

_____

[9] DeMoisey also contends that Infocon is seeking recovery based on allegations of malpractice and/or misconduct, thereby "belabor[ing this proceeding] with ancillary 'legal' claims." [Doc. 352 at 17]. The Jefferson Circuit Court dismissed Infocon's malpractice claims as untimely, and Infocon does not reassert them here. DeMoisey's citations to cases addressing the viability of a malpractice suit brought against an attorney in which the former client voluntarily settled the underlying claim are misplaced.

12

Therefore, a logical procedure for parsing the various issues in such a determination would be to determine the unreduced *quantum meruit* fee first (which would naturally require consideration of evidence relevant to the quality of the attorney's work, such as misconduct), then the issue of any setoff for damages from the attorney's breach, and only last whether some or all of any resulting fee should be forfeited as a sanction. *Searcy, supra,* 629 So. 2d at 954; *see also, Badillo v. Playboy Entm't Group, Inc.,* 302 Fed. App'x. 901, 902-903 (11th Cir. 2008) (same).

Infocon's misconduct allegations are relevant to determining the quality of DeMoisey's services. Those allegations may lead to a reduction in an award or even provide an affirmative defense to his claims. Thus, DeMoisey's motion to bar Infocon's evidence of his alleged misconduct is denied. Likewise, the Jefferson County Circuit court's findings with respect to such allegations will not be re-litigated in this matter.[10]

### III. Cap on Recovery

DeMoisey previously submitted materials suggesting he is entitled $390,000 in hourly fees for his legal services. While reserving its right to contest the accuracy of those fees, Infocon asks that I preemptively preclude DeMoisey from recovering any amount greater than that sum. [Doc. 351].

Infocon agrees that any recovery to which DeMoisey should be determined on the basis of *quantum meruit.* Infocon asserts, however, that because DeMoisey has lost his contingent fee claim, *res judicata* requires that DeMoisey's *quantum meruit* recovery should be capped at the maximum amount he has previously asserted other than *per* his failed contingent fee claim.

---

[10] As discussed above, that court held that DeMoisey's attempts to establish a contingency agreement failed to satisfy the requirements of Kentucky Rule of Professional Conduct 1.5, concerning the requirements of a proper contingent fee contract. Therefore, the court held, DeMoisey had no fee agreement with Infocon regarding his representation of Infocon in the Exact litigation. [Doc. 351-1 at 5-8].

13

Infocon bases this request on the August 4, 2010 Jefferson Circuit Court decision. But that court made no finding as to the maximum amount of remuneration to which DeMoisey might be entitled. It merely articulated the theory under which DeMoisey might seek to recover.[11]

As outlined above, determination of reasonable fees in Kentucky requires an inquiry into a number of factors designed to balance the equities of the situation. A trial court called upon to determine the reasonable value of a discharged-attorney's services in *quantum meruit* should consider the totality of the circumstances. The number of hours the attorney spent on his work is only one factor.[12] 1-10 Commercial Damages: Remedies in Business Litig P 10.17; *see also, Reid, Johnson, Downes, Andrachik & Webster v. Lansberry,* 68 Ohio St.3d 570 (1994) ("The number of hours worked by the attorney before the discharge is only one factor to be considered. Additional relevant considerations include the recovery sought, the skill demanded, the results obtained, and the attorney-client relationship itself.")

As stated in *Morgan & Morgan, P.A. v. McKean,* 2011 WL 1813682 *2 (Fla. Dist. Ct. App. 2011) (quoting *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz*, 652 So. 2d 366, 369 (Fla. 1995):

> Thus, while the time reasonably devoted to the representation and a reasonable hourly rate are factors to be considered in determining a proper quantum meruit award, the court must consider all relevant factors surrounding the professional relationship to ensure that the award is fair to both the attorney and client .   .   . The weight to be given various factors and the ultimate determination as to the amount to be awarded

---

[11] It seems, accordingly, that Infocon relies not on the court's holding, but rather on estoppel. Infocon has not argued as much, and I decline to do so for them.

[12] This is not to say that the invoices DeMoisey submitted are unimportant. In order to determine what DeMoisey merits under a theory of *quantum meruit*, the invoices he submitted ought to be considered. However, should DeMoisey succeed in producing evidence that he is owed more than the $390,000 cap proposed by Infocon, the lack of a contingency arrangement should have no effect.

14

are matters left up to the sound discretion of the court.

In light of the equitable nature of the *quantum meruit* determination and the necessity of considering the totality of the circumstances, I decline to cap DeMoisey's potential recovery at a previously submitted tally of hours worked.

### III. Lodestar Approach

Infocon asserts that DeMoisey may not ask this court to use a lodestar approach to award him a contingent fee. [Doc. 351]. A lodestar approach is inappropriate, Infocon argues, because it is limited to fee-shifting statutes and contracts where the losing party pays the winning party's attorney's fees.

Lodestar awards involve a simple computation multiplying the number of hours reasonably expended by the reasonable hourly rate. Infocon is correct that a lodestar approach is inappropriate. As explained elsewhere in this opinion, courts determining the reasonable value of an attorney's services under *quantum meruit* take into account the totality of the circumstances, including those factors discussed in the Kentucky Rules of Professional Conduct.

But DeMoisey has not requested that I employ a lodestar approach. In fact, DeMoisey asserts that in doing so, I would commit reversible error.

It seems Infocon means to argue that DeMoisey's fee may not, through a *quantum meruit* determination, be found to be equal to a contingency fee recovery—*i.e.* thirty-three percent of the settlement. As explained above, I decline artificially and as a matter of law to determine that DeMoisey's fee cannot be equal to a certain percentage of Infocon's total recovery. As unlikely as such an outcome would be, if DeMoisey were to provide evidence that he had done work reasonably valued at such an amount, the coincidence of its percentage would be irrelevant.

15

**Conclusion**

For the foregoing reasons, it is hereby

ORDERED THAT

1.      DeMoisey's motion regarding Infocon's intent to submit evidence alleging malpractice and misconduct [Doc. 352], be and the same hereby is denied;

2.      DeMoisey's motion to strike Infocon's jury request [Doc. 353] be, and the same hereby is granted; and

3.      Infocon's motion with respect to the preclusive effect of the 8/4/2010 order [Doc. 351] be, and the hereby granted as to evidence of a contingent fee agreement; denied as to a proposed cap on recovery; and denied as to lodestar recovery.

4.      A telephone pretrial is scheduled for July 6, 2011 at 3:30p.m.  The Court will initiate the phone call.

So ordered.


                                                    /s/ James G. Carr
                                                    Sr. United States District Judge