**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Exact Software NA,                                                                Case No. 3:03CV7183

        Plaintiff

    v.                                                                                        **ORDER**

Infocon Systems, Inc.,

        Defendant

        This case began as a collection action by a software manufacturer, Exact Software NA, against one of its "resellers" (*i.e.*, distributors), Infocon Systems, Inc. After protracted proceedings, Exact and Infocon settled for a payment of $4,000,000 by Exact to Infocon.

        Shortly after reaching (but not yet disclosing) the settlement, Infocon notified its attorneys, J. Fox DeMoisey, of Louisville, Ky., and John Carey, of Toledo, Ohio, that it was terminating their services. Infocon provided no explanation for that action.

        DeMoisey and Carey first learned of the settlement when Infocon's successor counsel notified the undersigned that the parties had settled the case. Immediately on learning of the settlement, DeMoisey filed a charging lien with this court.

        Infocon opposed that action and asked that I allow it to receive the entire proceeds of the settlement forthwith. I declined to do so, ordering a portion of the settlement proceeds to be paid into this court's escrow account. I have released some of those funds to DeMoisey and Carey.

        Infocon opposes release of any of the remaining fund to DeMoisey. In prior orders, I have agreed with it that no contingent fee agreement existed between it and him. Thus, to the extent that

DeMoisey is entitled to additional funds for his services, he must establish his entitlement on a *quantum meruit* basis.[1]

Pending are three motions in limine that Infocon has filed, in which it seeks to: 1) preclude expert testimony by three attorneys on DeMoisey's witness list (Doc. 365); 2) strike DeMoisey's summary exhibit representing the time he and his associate spent while representing Infocon (Doc. 366); and 3) preclude evidence about how the two principals of Infocon treated the settlement proceeds for tax purposes. (Doc. 367).

For the reasons that follow, I deny the motions – though, as to one, denial is conditional on DeMoisey's providing discovery as requested by Infocon.

With regard to the motion to preclude expert testimony by three attorneys, DeMoisey has stated he will be calling only one of those attorneys – namely, Mr. Carey, his former co-counsel. I see no basis on which to exclude his testimony *in toto*, as Infocon demands. That motion is overruled.

I likewise overrule the motion to strike the time and task summary. Infocon challenges the reliability of the data on which DeMoisey bases that exhibit. The basis for its challenge is the undisputed fact that DeMoisey's record of time and task underlying the summary is to a considerable extent a *post hoc* reconstruction, rather than being composed of contemporaneous entries.

That fact goes to weight, not admissibility. In other circumstances, the law permits a party to work backwards from disparate data to a conclusion. *See U.S. v. Hart*, 70 F.3d 854, *860 n.8 (6th Cir. 1995) (referencing computation of defendant's tax liability by "net worth" method).

---

[1] As I have also previously ruled, I will adjudicate this dispute without a jury.

Infocon complains that it does not have access to the underlying data on which DeMoisey bases his reconstruction. DeMoisey resists disclosure of that data on, *inter alia*, grounds of privilege and burdensomeness.

I do not find his contentions well-taken.

With regard to burdensomeness, he will have to do no more work than he had to do in the first instance to prepare the data on which he bases his summary. If he did not record what he used and where he found it, he should have done so. Given the unusual circumstance of presenting a reconstruction, at least in part, of his time and tasks, he should have foreseen Infocon's demand for access to the underlying data.

With regard to DeMoisey's claim of privilege, the materials that Infocon wants, and which alone are pertinent, are records relating solely to DeMoisey's work for Infocon. As the client, it was entitled *ab initio* to such information; as an adversary, it is entitled to such information in due course in pretrial discovery. There is no need for DeMoisey to disclose information about any other clients, the time he spent working for them, or the work he did for them. Disclosure contravenes no privilege.

While I deny the motion to strike, I do so conditioned on production of the underlying data on which DeMoisey bases his summary of his time and tasks.

Finally, I overruled the motion to preclude evidence as to the tax treatment of the settlement proceeds. Most broadly viewed, DeMoisey claims that Infocon's two principals engaged in a scheme to deprive not just himself, but others – including the IRS – of funds to which he and they were entitled. According to him, that scheme, involved, in part, taking different positions at different times as to the nature of the settlement.

According to DeMoisey, Infocon's principals at one time took the position that the settlement proceeds were for damages, and did not involve an asset sale by Infocon.

That occurred during malpractice litigation between Exact and one of its former attorneys.[2] Later, however, Infocon's principals treated the funds for tax purposes as proceeds of an asset sale. Thereby, they obtained capital gains, rather than ordinary income treatment.

I conclude that, in light of DeMoisey's contentions, evidence as to variant statements by Infocon's principals as to the nature of the settlement bears on their plan, scheme, motive and intent in their dealings with DeMoisey and opposing effort to secure additional compensation.

Allowing DeMoisey to question the principals about former testimony under oath and statements on income tax returns will not, as Infocon alleges, convert this into a tax case. Whether the tax returns were accurate does not matter. What matters is whether, under different circumstances, either or both the principals characterized the nature of the settlement differently in different circumstances.

If one or both of the principals stated inconsistent views about the nature of the settlement (damages vs. asset sale), that fact bears on DeMoisey's contention that they intended to deprive DeMoisey of his fair share of the settlement proceeds. As such, this evidence is admissible under Fed. R. Evid. 404(b).

---

[2] As a result of certain actions and inaction on the part of the former attorney, I had, at one point in this case, stricken Exact's complaint and entered judgment by default in favor of Infocon on its counterclaim against Exact. This led to Exact's malpractice suit against the lawyer. Apparently, her law firm contributed to the $4,000,000 settlement of the underlying litigation in this case. It did so, according to DeMoisey, in part on the basis of the representation by Infocon that the settlement represented an award of damages.

Such inconsistency, if established, will bear as well, of course, on the credibility of whatever other testimony the principals will offer at trial.

At most, this line of inquiry should be brief and straightforward. Namely, proof of any testimony about how individuals viewed the settlement proceeds and copies of how they treated the proceeds for income tax purposes.

In light of the foregoing, it is hereby

ORDERED THAT defendant Infocon's motions to preclude expert testimony (Doc. 365), strike summary exhibit (Doc. 366) and preclude evidence about treatment of settlement proceeds for tax purposes (Doc. 367) be, and the same hereby are overruled, as provided herein.

So ordered.

/s/ James G. Carr
Sr. United States District Judge